STATE OF NORTH CAROLINA v. ROWLAND ANDREW HEDGEPETH

No. 614A87

(Filed 3 October 1991)

**1. Homicide § 15.2 (NCI3d) — defendant's relationship with children and reconciliation attempts — exclusion harmless**

In a prosecution for the first degree murder of a man who was dating defendant's estranged wife, error, if any, in the court's exclusion of testimony by defendant's brother concerning defendant's good relationship with his children and his attempts to reconcile with his wife was harmless where the jury heard similar testimony by defendant; such evidence had little probative value on what happened at the time of the murder; there was plenary and convincing evidence of all elements of first degree murder, including premeditation and deliberation; and there was no reasonable possibility that the jury would have found defendant not guilty of first degree murder had it heard the excluded evidence. N.C.G.S. § 15A-1443(a).

**Am Jur 2d, Homicide § 274.**

**2. Homicide § 15.2 (NCI3d) — specific intent to kill — capability of defendant — expert testimony**

The trial court did not err in allowing an expert for the State to testify that defendant was capable of forming the specific intent to kill on the date of an alleged murder.

**Am Jur 2d, Homicide §§ 395, 397.**

**3. Homicide § 24.1 (NCI3d) — presumptions from use of deadly weapon — omission of "intentional" in instructions — no plain error**

While it was error for the trial court in a first degree murder case to omit the word "intentionally" before the word "killed" in its instructions permitting the jury to infer unlawfulness and malice from proof "that the defendant killed the victim with a deadly weapon," this omission did not rise to the level of plain error where the instructions, taken as a whole, made it clear that the killing of the victim must have been intentional in order for defendant to be convicted of first degree murder; all the evidence showed that the killing

was intentional as opposed to accidental; and the jury found an intentional killing by its verdict of guilty of first degree murder.

**Am Jur 2d, Homicide §§ 265, 509.**

4. **Homicide § 25.2 (NCI3d) — specific intent to kill — consideration of defendant's mental state — failure to instruct not plain error**

The trial court's failure to instruct the jury in a first degree murder case that it could consider defendant's mental or emotional condition on the issue of defendant's specific intent to kill his victim did not constitute plain error where the court's instructions did direct the jury to consider evidence of defendant's mental and emotional state on the elements of premeditation and deliberation; the jury found the existence of those elements beyond a reasonable doubt; and there can be little doubt that the jury would have found the existence of the specific intent to kill element had it been told to consider evidence of defendant's emotional state on that element.

**Am Jur 2d, Homicide § 501.**

5. **Assault and Battery § 32 (NCI4th) — felonious assault — peremptory instruction on serious injury — when permitted**

A trial court may peremptorily instruct the jury on the serious injury element of felonious assault, N.C.G.S. § 14-32, if the evidence is not conflicting and reasonable minds could not differ as to the serious nature of the victim's injuries.

**Am Jur 2d, Assault and Battery § 48; Homicide § 579.**

6. **Assault and Battery § 32 (NCI3d) — felonious assault — peremptory instruction on serious injury — sufficient evidence**

The trial court in a prosecution for felonious assault did not err in instructing the jury that a bullet wound that "enters the flesh and exits the flesh is a serious injury" where the defendant presented no evidence contradicting the State's evidence on the victim's injuries, and reasonable minds could not differ as to the seriousness of the victim's injuries where the evidence showed that a bullet ripped through the victim's ear mere inches from her skull, the victim required emergency room treatment for a gunshot wound, powder burns and lacera-

tions on her ear and hand, and the victim still suffered from daily ringing in her ear at the time of trial.

**Am Jur 2d, Assault and Battery § 48; Homicide § 579.**

7. **Criminal Law § 1352 (NCI4th)— capital sentencing proceeding—McKoy error—death sentence vacated**

There was prejudicial *McKoy* error in the sentencing phase of a first degree murder trial entitling a defendant who was sentenced to death to a new sentencing hearing where the court's instructions and the verdict form required the jury to find unanimously the existence of each of eleven submitted mitigating circumstances, two of which were statutory; the jury failed unanimously to find the existence of any of the mitigating circumstances submitted; and there was substantial evidence to support at least some, if not all, of the mitigating circumstances submitted.

**Am Jur 2d, Criminal Law § 600; Trial § 1113.**

**Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) from judgment imposing death sentence entered by *Small, J.*, at the 26 October 1987 Criminal Session of Superior Court, HALIFAX County. Defendant's motion to bypass the Court of Appeals on his related assault conviction was allowed 13 January 1988. Heard in the Supreme Court 15 November 1989.

*Lacy H. Thornburg, Attorney General, by Tiare B. Smiley, Special Deputy Attorney General, for the State.*

*Thomas K. Maher for defendant-appellant.*

EXUM, Chief Justice.

On proper bills of indictment, defendant was tried and convicted of assault with a deadly weapon with intent to kill inflicting serious injury upon his estranged wife, Beverly Hedgepeth, and of first-degree murder of Richard Casey. Defendant was sentenced to death on the murder conviction and to twenty years imprisonment on the felonious assault conviction.

Defendant appeals, assigning numerous errors to all phases of his trial.

We find no error in defendant's murder conviction or in his conviction on the felonious assault charge. However, we vacate the sentence of death and remand to the trial court for a new capital sentencing proceeding pursuant to *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990).

## I.

The State's evidence tends to show the following:

During the night of 12-13 February 1987 defendant's estranged wife, accompanied by Richard Casey and Dennis and Ruth Morgan, was at Howard Johnson's restaurant for breakfast. Defendant entered the restaurant and sat at a booth near the others. Seeing that defendant had a gun, Dennis Morgan went over and sat with him. Morgan, who had known defendant for years, believed defendant was "angry" and under the influence of alcohol. Referring to his estranged wife and Casey, defendant told Morgan that he "was going to kill both of them and he was going to kill himself." Defendant said "[t]hat son-of-a-bitch has had every woman in Roanoke Rapids, but he won't have her." Defendant balled up a pack of cigarettes and threw it toward the booth where his wife was seated, saying "[s]moke that cigarette bitch, it'll be your last one." He said to Morgan, "I've been thinking about this for seven months now."

Defendant told Morgan, "I love that woman." Defendant also said that Mrs. Hedgepeth had already caused one man to kill himself, referring to her first husband. Morgan told defendant Mrs. Hedgepeth's first husband had raped a child, and defendant became angrier because he had not been previously informed of this. Morgan repeatedly attempted to discourage defendant from shooting his wife and from committing suicide.

Defendant went over to the booth where his wife and Casey were sitting. Casey told defendant he wanted no trouble. Defendant responded, "Let me show you trouble" or "This is trouble." Defendant drew a pistol and fired at Casey. Defendant fired several more times at Casey and once at Mrs. Hedgepeth.

A police officer entered the restaurant and ordered defendant to freeze. Defendant threw out his gun, said "I quit," and was arrested.

Casey died from the effects of four gunshot wounds. Mrs. Hedgepeth suffered a gunshot wound to her left ear which was

closed with stitches. The ear has since caused problems, including pain and ringing.

Defendant's evidence tends to show the following:

Defendant suffered a serious head injury in 1976 when he fell from a second story window onto a concrete sidewalk. The accident altered his personality, rendering him less patient and more prone to act on impulse; it reduced his tolerance for alcohol.

Defendant testified as follows: Before 1976, he had been convicted of "engaging in an affray in public, simple assault, a few driving tickets, speeding or something like that, one public drunkenness, that's all." He had spent no time in prison before 1976. After his head injury in 1976, he was convicted of simple assaults, damage to personal property, damage to real property and drunk and disorderly conduct. He had never been convicted of any crime involving use of a knife or gun. Neither had he been convicted of a felony, although he did spend some time in prison at the Triangle Correctional Facility for a pre-sentence study. This study included psychiatric evaluation.

Each time he had been in trouble with the law, drinking was involved. He would successfully abstain from alcohol for long periods of time but occasionally suffered relapses.

While defendant and Mrs. Hedgepeth were separated they discussed reconciliation, and he maintained a close relationship with their son and his stepdaughter. Mrs. Hedgepeth told defendant she was dating other men and who they were. Defendant learned in late January 1987 that his wife was seeing Richard Casey.

On 12 February 1987 Mrs. Hedgepeth told defendant she was not going to reconcile with him. After she told defendant where she was going that night, defendant asked who she would be dating. She replied, "That's none of your business. If you want to see, you come see, but don't come anywhere near us."

After defendant entered Howard Johnson's restaurant and sat down, Morgan joined him and said defendant should not be there. Defendant replied that his wife had told him he could come to see who she was dating. Defendant, maintaining he still loved his wife, expressed his belief that she was seeing other men even before their separation. Morgan responded, "I know." This made defendant even angrier than he had initially been. Defendant got

"madder by the minute" because of these and other comments by Morgan.

Defendant also told Morgan about how his wife had laughed at him when he told her he was thinking about committing suicide. Morgan told defendant to think about his son. Defendant replied that he had been thinking about his son for seven months. Morgan explained that Beverly wasn't worth all this trouble.

Morgan asked defendant if he knew why Beverly's first husband had killed himself. According to Morgan, defendant's response was wrong. Morgan then told defendant that the first husband had sexually molested the couple's daughter. Defendant immediately flew into a rage at Beverly for not having told him the truth about her first marriage especially when, according to Mr. Morgan, many other people knew the reason.

Defendant got up from the booth and Morgan asked why defendant didn't just take "him" (Casey) outside. Defendant replied that he would bust Casey up a little if he got smart. Defendant then confronted his wife for lying to him about the sexual molestation. Casey told him to shut up and get out, and defendant responded that he was talking to his wife. Casey told defendant several times to leave, and refused to accompany him if he did, saying " 'I'm not going anywhere with you. Why don't you just shut up and go on. All you are is mouth.' "

Defendant started to leave but turned back. While looking toward Morgan, defendant saw Casey stand up. Defendant drew his gun and shot Casey. After firing several shots at Casey, defendant leaned into the booth and heard his wife scream, "I'm hit."

A police officer arrived on the scene and forced defendant to lie facedown on the floor of the restaurant. Defendant was still clicking off empty rounds of his gun. He testified that only then did he realize what he had done. He denied going into the restaurant in order to kill either his wife or Casey.

Dr. Stanley Preston Oakley testified that defendant's fall in 1976 caused persistent nerve damage and cerebral bleeding. This resulted in organic brain syndrome, which causes disorganized thinking and confusion. Several other doctors diagnosed defendant as having extreme difficulty in controlling his impulses due to the brain trauma. Dr. Oakley concluded that defendant's ability to con-

form his conduct to the requirements of the law was "definitely impaired" by the head injury at the time he shot Richard Casey.

The State presented rebuttal evidence, which tends to show the following:

After the shootings, defendant underwent testing at Dorothea Dix Hospital by Dr. Bob Rollins. Although Dr. Rollins did not dispute the possible effects of organic brain damage, he believed, based on tests he conducted on defendant, that defendant's impairment was minimal. Dr. Rollins believed the head injury exacerbated defendant's already poor judgment. Even though he thought defendant was intoxicated at the time of the shootings, Dr. Rollins believed that defendant could form the specific intent to kill. On cross-examination, Dr. Rollins testified that defendant was under the influence of a "mental or emotional disturbance" at the time of the shooting and that his "ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law" was impaired.

At the close of all evidence, the trial court instructed the jury and submitted possible verdicts. On the murder charge, the trial court submitted alternatives of first-degree murder, second-degree murder, manslaughter, and not guilty. The jury found defendant guilty of first-degree murder. On the felonious assault charge, the trial court submitted alternatives of assault with a deadly weapon with intent to kill inflicting serious injury, assault with a deadly weapon inflicting serious injury, assault with a deadly weapon, and not guilty. The jury found defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury.

The trial court then conducted a capital sentencing proceeding on defendant's first-degree murder conviction. After hearing evidence of both aggravating and mitigating circumstances, the jury found unanimously and beyond a reasonable doubt the only aggravating circumstance submitted to it: that the "murder [was] part of a course of conduct in which the defendant engaged . . . [which] included the commission by the defendant of crimes of violence against other persons."

The trial court also submitted eleven proposed mitigating circumstances to the jury with the instruction that the jury must find each mitigating circumstance unanimously. The jury did not unanimously find any of the eleven mitigating circumstances sub-

mitted. Having found no mitigating circumstances, the jury then found unanimously and beyond a reasonable doubt that the aggravating circumstance was sufficiently substantial to call for the death penalty; and it recommended a sentence of death which the trial court imposed.

The trial court also conducted a sentencing hearing on defendant's assault conviction. The trial court concluded that certain found aggravating factors outweighed certain found mitigating factors. The trial court sentenced defendant to the maximum term of twenty years imprisonment on the assault conviction.

## II.

Because we are ordering a new sentencing hearing pursuant to *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990), we need not address defendant's assignments of error regarding the jury selection proceedings, all of which relate to juror attitudes to the death penalty. We turn, therefore, to the guilt phase issues.

## A.

[1] Defendant first contends the trial court erred in excluding his brother's testimony concerning defendant's relationship with his children and attempts to reconcile with his wife. The trial court excluded the following testimony by defendant's brother Billy, elicited on voir dire:

> It was as if both kids belonged to [defendant] and it was a lot of love there, and always a good relationship they had from the standpoint I wished I had kids of my own. They looked up to me as if they did to him. And it was a good relationship.

The trial court also excluded Billy's testimony, again elicited on voir dire, that, "[defendant] didn't change much after the separation other than he tried harder after the separation than he did before the separation to reconciliate the marriage, to bring things back together."

Assuming, without deciding, that the testimony should have been admitted, we must determine if its exclusion was harmless. Since the error, if any, in excluding this evidence, is not of constitutional dimension, the burden is on defendant to show a reasonable possibility that the jury would have reached a different result

had the evidence been admitted. N.C.G.S. § 15A-1443(a) (1977). Defendant has not carried this burden.

There is plenary and convincing evidence of all elements of first-degree murder, including premeditation and deliberation. This evidence centers on the events which occurred on the evening of the shootings. Evidence of defendant's good relations with his children and his earlier efforts at reconciliation with his wife has little probative value on what happened at the time of the shootings themselves. Further, defendant testified without contradiction about his desire for reconciliation and his relationship with his children. The jury was thus able to consider evidence of like import to that which was excluded. That the jury did so and nonetheless found defendant guilty of first-degree murder negates any reasonable possibility that the jury would have reached a different conclusion had it heard the excluded evidence. This assignment of error is therefore overruled.

B.

[2]  Defendant next contends the trial court should have excluded the testimony of Dr. Rollins, an expert for the State, that defendant was capable of forming the specific intent to kill. Dr. Rollins testified:

Q: What is your opinion as to whether or not the defendant on February 13th, 1987 based on your examinations and talking with him, what is your opinion as to whether or not he on February 13th, whether his mind and reason were so completely intoxicated and overthrown that he could not form a specific intent to kill[?]

MR CRANFORD: Objection.

COURT: Overruled.

A: My opinion is that at that time Mr. Hedgepeth was intoxicated to some degree with alcohol. He was suffering from his basic personality problems, but it was my opinion that he wasn't so impaired that he was unable to form a specific intent.

There is no error in the admission of this testimony. *State v. Clark*, 324 N.C. 146, 159, 377 S.E.2d 54, 62 (1989) (Expert witness not precluded from testifying as to whether defendant able to formulate prerequisite intent.); *State v. Rose*, 323 N.C. 455, 458, 373 S.E.2d 426, 428 (1988) ("[T]rial court properly allowed [psychiatric]

testimony that . . . defendant could not form the specific intent
to kill . . . .").

C.

[3] Defendant next assigns as error the trial court's instructions
to the jury concerning the inference of malice arising from defend-
ant's use of a deadly weapon.

The trial court initially instructed the jury as follows:

Now I instruct you that in order for you to find the defend-
ant guilty of first degree murder, the State must prove six
things beyond a reasonable doubt:

First, the defendant intentionally and with malice killed
Richard Casey with a deadly weapon.

Malice means not only hatred, ill will, or spite, as it is
ordinarily understood to mean — to be sure, that is malice — but
malice also means that condition of the mind which prompts
a person to take the life of another intentionally or to inflict
intentionally serious bodily harm which proximately results
in the victim's death without just cause, excuse, or justifica-
tion. If the State proves beyond a reasonable doubt *that the
defendant killed the victim with a deadly weapon* or inten-
tionally inflicted a wound upon the deceased with a deadly
weapon that proximately caused the death of Richard Casey,
you may infer first, that the killing was unlawful, and second,
that it was done with malice, but you are not compelled to
do so. You may consider this along with all other facts and
circumstances in determining whether the killing was unlawful
and whether it was done with malice.

A firearm such as a .22 caliber revolver which has been
introduced into evidence in the trial of this case is a deadly
weapon.

Second, the State must prove that the defendant's acts
was [sic] a proximate cause of the death of Richard Casey.
A proximate cause is a real cause, a cause without which
the death of Ricky Casey would not have occurred.

Third, the State must prove the defendant intended to
kill Richard Casey. Intent is a mental attitude seldom provable
by direct evidence. It must ordinarily be proved by cir-

**STATE v. HEDGEPETH**

[330 N.C. 38 (1991)]

cumstances from which it may be inferred. An intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties and other relevant circumstances.

Fourth, the defendant acted with premeditation, that is, that he formed the intent to kill the victim over some period of time, however short, before he acted.

Fifth, the defendant acted with deliberation, which means that he acted while he was in a cool state of mind. This does not mean that there had to be a total absence of passion or emotion. If the intent to kill was formed with a fixed purpose, not under the influence of some suddenly aroused violent passion, it is immaterial that the defendant was in a state of passion or excited when the intent was carried into effect.

(Emphasis added.)

After the jury had deliberated for some time it returned to request that the trial judge instruct it again concerning the elements of first- and second-degree murder. The trial court instructed as follows regarding first-degree murder:

Now I instruct you that in order for you to find the defendant guilty of first degree murder, the State must prove six things beyond a reasonable doubt:

Now I had to define self-defense because it is one of the six things, but it's the last one I'll mention.

The six things the State must prove beyond a reasonable doubt is [sic]:

First, the defendant intentionally and with malice killed the victim with a deadly weapon.

Second, the defendant's act was a proximate cause of the victim's death.

Third, the defendant intended to kill the victim.

Fourth, the defendant acted with premeditation.

Fifth, the defendant acted with deliberation.

And sixth, the defendant did not act in self-defense or that the defendant was the aggressor in bringing on the fight

with the intent to kill or with the intent to inflict serious bodily harm upon the deceased.

Now that is the bare bones minimum of the six elements. Now in the course of my instructions to you as I gave you each of those elements I supplemented my instructions by adding this as to the first element:

The defendant intentionally and with malice killed the victim with a deadly weapon.

I went on to instruct you initially; Malice not only means hatred, ill will, or spite, as it is ordinarily understood to mean—to be sure, that is malice—but malice also means the condition of the mind which prompts a person to take the life of another intentionally or to intentionally inflict serious bodily harm which proximately results in the death of the victim without just cause, excuse or justification. If the State proves beyond a reasonable doubt *that the defendant killed the victim with a deadly weapon* or that the defendant intentionally inflicted a wound upon the deceased with a deadly weapon that proximately caused the victim's death, you may infer first, that the killing was unlawful, and second, that it was done with malice, but you are not compelled to so infer. You may consider this along with all other facts and circumstances in determining whether the killing was unlawful and whether it was done with malice.

(Emphasis added.)

Defendant assigns error to the italicized portions of the above instructions. He argues that it was error for the trial court to omit the word "intentionally" before the word "killed" in each instance that the court instructed on the inference of malice. Defendant did not object at trial to these instructions. We review the alleged error, consequently, under the plain error doctrine.

It was error for the trial court to omit the word "intentionally," as defendant contends. "Upon a showing that there has been an intentional killing with a deadly weapon, the law permits the jury to infer that the homicide was committed with malice." *State v. Hutchins*, 303 N.C. 321, 346, 279 S.E.2d 788, 804 (1981); *accord*

STATE v. HEDGEPETH

[330 N.C. 38 (1991)]

*State v. Patterson,* 297 N.C. 247, 254 S.E.2d 604 (1979).[1] In *State v. Burrage,* 223 N.C. 129, 25 S.E.2d 393 (1943), defendant was convicted of first-degree murder and sentenced to death. The State's evidence was that defendant killed the victim by shooting her with a pistol. Defendant's evidence tended to show that he did not intend to kill the victim but that she was shot in a struggle over the pistol. This Court found reversible error in the trial court's instructions to the jury that malice could be presumed "from the use of a deadly weapon." The Court said, "The vice common to these instructions is the failure to instruct that it is the intentional killing of a human being with a deadly weapon which raises the presumption of malice. . . . [T]he law is well established in this state that the intentional killing of a human being with a deadly weapon implies malice, and, if nothing else appears, constitutes murder in the second degree." *Id.* at 133, 25 S.E.2d at 396.

We are confident that while the omission of the word "intentionally" at the places in the instruction about which defendant complains was error, it falls far short of rising to the level of plain error. Plain error arises

> in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir.), *cert. denied,* 459 U.S. 1018, 74 L. Ed. 2d 513 (1982) ).

---

1. While this Court has found no plain error, *State v. McCoy,* 320 N.C. 581, 359 S.E.2d 764 (1987), and no error, *State v. Forrest,* 321 N.C. 187, 362 S.E.2d 252 (1987), in instructions similar to the one at bar, the precise argument which defendant makes here was not made in those cases, and the Court did not consider the omission of the word "intentionally" in those cases as it might have affected the correctness of the instructions.

Here the instructions required the jury to find as an essential element of first-degree murder that defendant intentionally killed Richard Casey with a deadly weapon. The instructions, taken as a whole, make it clear that the killing of Casey must have been intentional in order for defendant to be convicted of first-degree murder. By its verdict of guilty of this crime the jury must have found an intentional killing. Essentially all the evidence, both that of the State and defendant, shows that the killing of Casey was intentional, as opposed to accidental. Had the error not been committed the outcome of the trial would have been the same. The error, therefore, had no probable impact on the jury's verdict. This assignment of error is overruled.

D.

[4] Defendant next assigns error to the trial court's instruction on the legal effect of his mental and emotional condition at the time of the shooting. During the instructions, the trial court told the jurors that:

> [y]ou may consider any or all of the evidence introduced relating to the mental and emotional condition of the defendant at the time of the shooting on the following issues: whether the defendant acted with premeditation at the time of the shooting; and whether the defendant acted with deliberation, that is in a cool state of mind at the time of the shooting.

Defendant did not object to the instruction at trial but raises the issue for the first time on appeal. The question, therefore, is whether the instruction amounted to plain error.

Defendant argues the instruction was erroneous because it did not permit the jury to consider defendant's mental or emotional condition on the issue of defendant's specific intent to kill his victim. He relies primarily on *State v. Rose*, 323 N.C. 455, 373 S.E.2d 426. In *Rose*, the trial court refused to submit the defendant's requested jury instruction, supported by the evidence, that it "may consider the Defendant's mental condition in connection with his ability to form the specific intent to kill." *Id.* at 457, 373 S.E.2d at 428. We held that the trial court's failure to give the instruction was reversible error "in light of the centrality of the issue of defendant's state of mind . . . ." *Id.* at 458, 373 S.E.2d at 428.

In *Rose*, the defense was that defendant was either legally insane or, if sane, then mentally incapable of forming a specific

STATE v. HEDGEPETH

[330 N.C. 38 (1991)]

intent to kill and premeditating and deliberating. Because the issue of defendant's mental capacity was so crucial in *Rose*, we held that failure to submit the requested instruction was prejudicial error pursuant to the standard of review in N.C.G.S. § 15A-1443(a) (1977).

Since defendant did not request any particular instruction or object to the charge as given, we apply the "plain error" standard of review previously discussed. Under this standard, defendant must demonstrate that the defect in the jury instruction was so fundamental as to have had a probable impact on the guilty verdict. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378.

We are confident no plain error occurred in the challenged instruction. Unlike in *Rose*, the instructions here did direct the jury to consider evidence of defendant's mental state on the elements of premeditation and deliberation. The jury, nevertheless, found beyond a reasonable doubt the existence of these elements. There can be little doubt that had the jury been told to consider this evidence on the specific intent to kill element of the crime, it would have, nevertheless, found the existence of the element. The error complained of, therefore, was not fundamental to the fairness of the trial and had no probable impact on the jury's verdict.

E.

Defendant next assigns error to the peremptory instruction given by the trial court on the "serious injury" element of the felonious assault charge. Defendant argues that the trial court, in effect, directed a verdict for the State on this element of the offense. We find no merit in defendant's argument.

Based on the State's evidence, the trial court instructed the jury on assault with a deadly weapon with intent to kill inflicting serious injury, and several lesser included offenses. During the course of these instructions, the trial court told the jurors that a "serious injury" under N.C.G.S. § 14-32(a) is "such physical injury as causes great pain and suffering." During its deliberations, the jury returned to the courtroom and requested that the trial judge define serious injury. The court responded:

When I was instructing you, I advised you that serious injury is such physical injury as causes great pain and suffering. In the case you are considering, I would instruct you that

*a bullet wound which is through and through, that is enters the flesh and exits the flesh is a serious injury.*[2]

(Emphasis added.) Defendant's objection to the charge was overruled. The jury returned to its deliberations and, approximately eight minutes later, decided on a verdict of guilty.

Defendant contends the highlighted portion of the instruction invades the province of the jury by requiring it to find that a shot passing through the victim's ear constitutes a serious injury. Although we have never directly addressed this issue, we find no error in what was effectively the trial court's peremptory instruction on the serious injury element of the crime.

Whether a serious injury has been inflicted depends upon the facts of each case and is generally for the jury to decide under appropriate instructions. *State v. James*, 321 N.C. 676, 365 S.E.2d 579 (1988). A jury may consider such pertinent factors as hospitalization, pain, loss of blood, and time lost at work in determining whether an injury is serious. *State v. Owens*, 65 N.C. App. 107, 308 S.E.2d 494 (1983). Evidence that the victim was hospitalized, however, is not necessary for proof of serious injury. *State v. Joyner*, 295 N.C. 55, 243 S.E.2d 367 (1978).

Although this Court has never considered whether the trial judge may peremptorily instruct the jury on the serious injury element of N.C.G.S. § 14-32,[3] the Court of Appeals has long upheld such peremptory instructions. *See State v. Owens*, 65 N.C. App. 107, 308 S.E.2d 494; *State v. Pettiford*, 60 N.C. App. 92, 298 S.E.2d 389 (1982); *State v. Springs*, 33 N.C. App. 61, 234 S.E.2d 193, *disc. rev. denied*, 293 N.C. 163, 236 S.E.2d 707 (1977); *State*

---

2. The North Carolina pattern instructions on N.C.G.S. § 14-32(a) provides that "[s]erious injury may be defined 'as such physical injury as causes great pain and suffering.' ... If there is evidence as to injuries which could not conceivably be considered anything but serious, the trial judge may instruct the jury as follows: '(Describe injury) would be a serious injury.'" N.C.P.I.—Crim. § 208.10 (repl. Oct. 1989). In the present case, the trial judge used essentially the same charge to the jurors.

3. "[W]hether the trial court may properly determine that an injury constitutes 'serious bodily injury' as a matter of law has not been settled by this Court." *State v. Kuplen*, 316 N.C. 387, 420, 343 S.E.2d 793, 811 (1986). The trial court in *Kuplen* had given a peremptory instruction that the injury under consideration was "serious" pursuant to a charge of first-degree rape under N.C.G.S. § 14-27. The defendant, however, failed to object and this Court found against him under the plain error standard. *Id.*

v. Davis, 33 N.C. App. 262, 234 S.E.2d 762 (1977). In Pettiford, the Court of Appeals said "we find support for [this] reasoning in the historical position taken by our appellate courts in deadly weapon cases, upholding the authority of our courts to classify weapons as deadly as a matter of law." 60 N.C. App. at 97, 298 S.E.2d at 392. This Court also likens the peremptory instruction on serious injury to the case where a trial court refuses to submit a lesser included charge not including the serious injury element. State v. Hicks, 241 N.C. 156, 84 S.E.2d 545 (1954); State v. Williams, 31 N.C. App. 111, 228 S.E.2d 668, disc. rev. denied, 291 N.C. 450, 230 S.E.2d 767 (1976).

[5]   Accordingly, we find merit in the standard espoused in Pettiford. The Pettiford court held that a trial court may peremptorily instruct the jury on the serious injury element of N.C.G.S. § 14-32 if the evidence "is not conflicting and is such that reasonable minds could not differ as to the serious nature of the injuries inflicted." 60 N.C. App. at 97, 298 S.E.2d at 392.[4] We adopt this standard today. In the absence of conflicting evidence, a trial judge may instruct the jury that injuries to a victim are serious as a matter of law if reasonable minds could not differ as to their serious nature.

[6]   Next, we must determine whether the facts of the present case support the trial court's peremptory instruction that Mrs. Hedgepeth's injuries were serious as a matter of law. Since defendant presented no evidence contradicting the State's evidence on Mrs. Hedgepeth's injuries, we need only consider whether reasonable minds could differ as to the seriousness of her injuries.

Beverly Hedgepeth testified that she was struck by a bullet which traveled through the thickness of her ear, causing a laceration requiring six or seven stitches to close. When she was taken to the emergency room for treatment she was covered in blood, some of which was hers and some of which was Casey's. She also had lacerations and burns behind her ear. Since the shooting, she has had daily trouble with ringing in the ear.

Dr. Elliott Mantahali testified that he treated Beverly Hedgepeth in the emergency room after she was shot. Her head was covered

---

4. In a footnote to Pettiford, the majority opinion also noted that the trial court could, in appropriate circumstances, resolve this issue by simply refusing to submit a lesser included offense not including serious injury. 60 N.C. App. at 97, 298 S.E.2d at 392.

with blood. She had a laceration and powder burns on her left hand. Another laceration requiring stitches extended from the front of her ear to the back, through its thickness. There was also an abrasion in the back of the ear in the mastoid area.

We think that reasonable minds could not differ as to the seriousness of Mrs. Hedgepeth's physical injuries. A bullet ripped through her ear mere inches from her skull. She required emergency room treatment for a gunshot wound, powder burns and lacerations on her hand and head. Her testimony indicates that her physical injuries may have some permanency since she was still suffering from daily ringing in her ear at the time of trial. We overrule this assignment of error.

## III.

[7] In the sentencing proceeding, we conclude there is reversible error in the trial court's jury instructions under *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369. The trial court's instructions and the verdict form required the jury to find unanimously the existence of each of eleven submitted mitigating circumstances, two of which were statutory, the mental or emotional disturbance circumstance, N.C.G.S. § 15A-2000(f)(2), and the impaired capacity circumstance, N.C.G.S. § 15A-2000(f)(6). The jury failed to find unanimously any of the mitigating circumstances submitted. There was substantial evidence to support at least some, if not all, of the mitigating circumstances submitted to, but not unanimously found by, the jury, including those defined by statute. As we said in *State v. Jones*, 327 N.C. 439, 396 S.E.2d 309 (1990), "[o]ne or more jurors may have believed some or all of [the submitted] circumstances existed and that the non-statutory circumstances had mitigating value." *Id.* at 449, 396 S.E.2d at 315. Therefore, we cannot conclude beyond a reasonable doubt that the *McKoy* error was harmless.

## IV.

In summary, we find no error in the guilt phase of defendant's trial for either the murder or the felonious assault conviction. For error in the sentencing proceeding on the first-degree murder conviction we remand for a new sentencing proceeding.

No. 87CRS775—first-degree murder: death sentence vacated; remanded for new capital sentencing proceeding.

No. 87CRS776—felonious assault: no error.