STATE OF NORTH CAROLINA v. DENISE KHADIJAH MORGAN

No. COA03-849

(Filed 18 May 2004)

### 1. Evidence— reference to prior convictions—mistrial denied

There was no abuse of discretion in an assault prosecution in the denial of defendant's motion for a mistrial after testimony that defendant told the victim that she had killed before. The court immediately sustained an objection, gave a curative instruction, and asked the jurors if they could follow the instruction.

### 2. Assault— serious injury—evidence sufficient

There was sufficient evidence for a jury to find serious injury in a prosecution for assault with a deadly weapon inflicting serious injury.

### 3. Appeal and Error— sentencing hearing—State meeting its burden of proof—no objection required

An alleged sentencing hearing error based on sufficiency of evidence as a matter of law did not require an objection at the hearing for preservation of appellate review.

### 4. Sentencing— prior convictions—sufficiency of evidence

The State presented sufficient evidence to show the existence of defendant's prior convictions in a sentencing hearing because comments by defendant's counsel constituted a stipulation to the existence of the prior convictions listed on a worksheet submitted by the State.

### 5. Sentencing— prior convictions in other states—similarity to N.C. offenses

A defendant's sentencing stipulation to the existence of prior convictions did not extend to whether those convictions were similar to North Carolina offenses, and the State failed to show that defendant's prior convictions were substantially similar to North Carolina offenses.

### 6. Evidence— victim's statement to detective—inconsistencies with trial testimony

There was no error in allowing a detective to read to the jury a statement made to him by the victim. Alleged inconsistencies

STATE v. MORGAN

[164 N.C. App. 298 (2004)]

between the victims's statement and his testimony were slight variations that did not render the statements inadmissible.

Appeal by defendant from judgment entered 20 February 2003 by Judge Ernest B. Fullwood in Superior Court, New Hanover County. Heard in the Court of Appeals 20 April 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Tina Lloyd Hlabse, for the State.*

*Haral E. Carlin for defendant appellant.*

WYNN, Judge.

Denise Khadijah Morgan, Defendant, appeals from judgment of the trial court entered upon her conviction for assault with a deadly weapon inflicting serious injury. Defendant contends the trial court erred by (I) denying her motion for a mistrial; (II) denying her motion to dismiss; (III) sentencing her at a prior record level IV; and (IV) denying her motion to suppress evidence. For the reasons stated herein, we find the trial court erred in sentencing Defendant based on insufficient evidence of her prior convictions. We otherwise find no error by the trial court.

The evidence presented by the State at trial tended to show the following: On 16 April 2002, Charles Maddox visited his friend, Frances Watson, at her residence. Defendant was also present. Maddox and Defendant once resided together, but their relationship ended more than a year before the date in question. Maddox testified Defendant "got angry because I wouldn't talk to her, and she saw me talking to some other girls, and one thing led to another and she just got angrier and angrier." Maddox stated he was leaving Watson's residence when "I heard [Defendant] behind me, and I turned around. I saw her coming at me" with "knives and forks, barbecue forks[;]" she "started stabbing at me," stating, "I'll kill you, m.f., I got you now." Defendant stabbed Maddox in the eye, and he ran to the bathroom. Maddox testified "I thought I was blind. I thought my eye was out." Defendant kicked the bathroom door open and continued to attack Maddox. Maddox fled the residence, and was later treated for his injuries at a hospital. Maddox's treating physician testified he sustained multiple lacerations to his forearm, several small stab wounds to his leg, a deep laceration to his thumb, bruising to his back, and a puncture wound to his right orbital rim, which caused fracture of the bone. Maddox was referred to medical specialists to treat the injuries to his eye and thumb.

Detective Ocee D. Horton, Jr., of the Wilmington Police Department testified he visited Maddox at the hospital and took his statement. Detective Horton then read to the jury from Maddox's statement as follows:

The victim stated he had stopped by Frances' apartment—and that would be Frances Watson—at approximately 12:00 a.m., to drop off some cigarettes, food and a few dollars to Frances. The victim stated that Frances let him into her apartment and that [Defendant] was there. The victim stated that [Defendant] started yelling and cursing at him. The victim stated that [Defendant] yelled that she hated him and that she would kill him. The victim stated that [Defendant] said she had already killed someone and that she could kill him, also.

Counsel for Defendant objected, and the trial court then instructed the jury as follows:

Ladies and gentlemen, let me say to you that any reference that was made to any prior criminal activity on the part of the defendant is not appropriate, and you should completely and totally disregard it. If you cannot do that, then I want you to raise your hand at this time. All right, let the record reflect that no one raised his or her hand.

The trial court denied Defendant's subsequent motion for a mistrial.

Defendant testified in her own defense and denied attacking Maddox. Defendant stated she was lying on Watson's couch when Maddox approached her and "sprayed [her] face with roach spray." Defendant followed Maddox into the kitchen, where the two argued and "tassled." Maddox picked up several knives and forks. Defendant then threw a frying pan at Maddox, who ducked and slipped. From his position on the floor, Maddox cut Defendant several times on her legs. Defendant threw a heavy punch bowl at Maddox, striking him in the temple. The wound to his temple bled heavily, and Maddox retreated to the bathroom. When he emerged from the bathroom, Maddox picked up a knife and "chased [Defendant] out" of the residence. Defendant drove away in her vehicle.

Upon conclusion of the evidence, the jury found Defendant guilty of assault with a deadly weapon inflicting serious injury. At sentencing, the State contended that Defendant's prior convictions gave her a total of nine points for a prior record level IV. One of Defendant's

convictions was a New Jersey conviction for homicide in the third degree. The State contended that this charge was equivalent to voluntary manslaughter under North Carolina law, and that it should be assessed as a Class F point value. Defendant disputed the State's position, arguing that it was an unintentional homicide and that Defendant was under level III. The trial court sentenced Defendant at level IV, with a minimum term of thirty-seven months and a maximum term of fifty-four months. Defendant appealed.

Defendant argues the trial court erred by (I) denying her motion for a mistrial; (II) denying her motion to dismiss; (III) sentencing her at a level IV; and (IV) denying her motion to suppress evidence. For the reasons stated herein, we hold the trial court erred in sentencing Defendant based on insufficient evidence of her prior convictions. We otherwise find no error by the trial court.

## I. *Motion for Mistrial*

[1] By her first assignment of error, Defendant contends the trial court erred in denying her motion for a mistrial after Detective Horton testified Defendant informed Maddox "she had already killed someone and that she could kill him also." Defendant argues the State elicited impermissible character evidence of Defendant's prior bad acts in an attempt to show she acted in conformity therewith during the present assault. Defendant contends the evidence substantially and irreparably prejudiced her, and that she is therefore entitled to a new trial.

Upon a motion by a defendant or with his concurrence,

the judge may declare a mistrial at any time during the trial. The judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case.

N.C. Gen. Stat. § 15A-1061 (2003). The decision to grant a motion for a mistrial is within the sound discretion of the trial court. *State v. Prevatte*, 356 N.C. 178, 253-54, 570 S.E.2d 440, 482 (2002), *cert. denied*, 538 U.S. 986, 155 L. Ed. 2d 681 (2003). A mistrial should be declared only if there are serious improprieties making it impossible to reach a fair, impartial verdict. *State v. McCarver*, 341 N.C. 364, 383, 462 S.E.2d 25, 35-36 (1995), *cert. denied*, 517 U.S. 1110, 134 L. Ed. 2d 482 (1996). The trial court's decision of whether to grant a mistrial "is

to be given great deference because the trial court is in the best position to determine whether the degree of influence on the jury was irreparable." *State v. Hill*, 347 N.C. 275, 297, 493 S.E.2d 264, 276 (1997), *cert. denied*, 523 U.S. 1142, 140 L. Ed. 2d 1099 (1998).

Although the statement by Detective Horton regarding possible crimes committed by Defendant was clearly inadmissible and should not have been elicited by the prosecutor, we do not conclude the trial court abused its discretion in denying her motion for mistrial. "When a court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice is ordinarily cured." *State v. Walker*, 319 N.C. 651, 655, 356 S.E.2d 344, 346 (1987). "Jurors are presumed to follow a trial court's instructions." *McCarver*, 341 N.C. at 384, 462 S.E.2d at 36. Here, the trial court immediately sustained Defendant's objection to the inadmissible evidence and gave a curative instruction by telling the jury to "completely and totally disregard" the objectionable statement. The trial court then asked the jury members to indicate whether they could not follow its instruction by raising their hands. The trial court indicated for the record that none of the jurors raised his or her hand. Under these circumstances, we must conclude the trial court did not abuse its discretion in denying Defendant's motion for a mistrial. *See State v. McNeill*, 349 N.C. 634, 648, 509 S.E.2d 415, 423 (1998) (holding that any potential prejudice was cured by the trial court's instruction to the jury not to consider the objectionable remark, and that the trial court did not err or abuse its discretion in denying the motion for a mistrial), *cert. denied*, 528 U.S. 838, 145 L. Ed. 2d 87 (1999); *State v. Pruitt*, 301 N.C. 683, 687-88, 273 S.E.2d 264, 267-68 (1981) (holding the trial court did not err in denying the defendant's motion for a mistrial upon admission of evidence related to another crime where the trial court instructed the jury that the objectionable evidence had nothing to do with the case, that the jury should strike the evidence from their minds, and that any juror who could not do so should raise his hand, which no juror did). We reject this assignment of error.

## II. *Motion to Dismiss*

[2] By further assignment of error, Defendant contends the trial court erred in denying her motion to dismiss the charge of assault with a deadly weapon inflicting serious injury. Specifically, Defendant argues the State presented insufficient evidence that the alleged victim, Maddox, suffered serious injury. Defendant's argument is without merit.

"Upon a defendant's motion to dismiss, the court must consider whether the State has presented substantial evidence of each essential element of the crime charged." *State v. Alexander*, 152 N.C. App. 701, 705, 568 S.E.2d 317, 319 (2002). Substantial evidence is such "relevant evidence that a reasonable mind might accept as sufficient to support a conclusion." *State v. Allen*, 346 N.C. 731, 739, 488 S.E.2d 188, 192 (1997). The trial court is required to view the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences to be drawn therefrom. *See id.*

"The courts of this [S]tate have declined to define serious injury for purposes of assault prosecutions other than stating that the term means physical or bodily injury resulting from an assault, *State v. Alexander*, 337 N.C. 182, 188, 446 S.E.2d 83, 87, and that 'further definition seems neither wise nor desirable.'" *State v. Ezell*, 159 N.C. App. 103, 110, 582 S.E.2d 679, 684 (2003) (quoting *State v. Jones*, 258 N.C. 89, 91, 128 S.E.2d 1, 3 (1962)). Whether a serious injury has been inflicted is a factual determination within the province of the jury. *State v. Hedgepeth*, 330 N.C. 38, 53, 409 S.E.2d 309, 318 (1991). Relevant factors in determining whether serious injury has been inflicted include, but are not limited to: (1) pain and suffering; (2) loss of blood; (3) hospitalization; and (4) time lost from work. *Id.* Evidence that the victim was hospitalized, however, is not necessary for proof of serious injury. *State v. Joyner*, 295 N.C. 55, 65, 243 S.E.2d 367, 374 (1978).

In the instant case, the State presented evidence tending to show that Maddox was treated at a hospital for multiple lacerations to his forearm, small stab wounds to his leg, a deep laceration to his thumb, bruising to his back, and a puncture wound to his right orbital rim, causing fracture of the bone. Because of the wounds to his eye and thumb, Maddox was referred to an eye specialist and a hand specialist. Maddox testified that, after Defendant stabbed him in the eye, he "thought [he] was blind. [He] thought [his] eye was out." We conclude the State presented sufficient evidence from which the jury could find that Maddox sustained serious injury as a result of Defendant's assault, and we therefore overrule this assignment of error. *See Hedgepeth*, 330 N.C. at 55, 409 S.E.2d at 319 (holding that reasonable minds could not differ as to the seriousness of the victim's physical injuries where the victim required emergency treatment for a gunshot wound to her ear and powder burns and lacerations on her head and hand).

III. *Prior Record Level*

[3] Defendant next argues the trial court erred in sentencing her at level IV. Defendant contends the State failed to prove the existence of any prior convictions by a preponderance of the evidence, and that the State also failed to show that her out-of-state convictions were substantially similar to corresponding North Carolina offenses.

The State argues that Defendant did not properly preserve this error for appellate review because she failed to object to the prosecution's calculation of her prior record level at the sentencing hearing. However, the assignment of error in this case is not evidentiary; rather, it challenges whether the prosecution met its burden of proof at the sentencing hearing. Error based on insufficient evidence as a matter of law does not require an objection at the sentencing hearing to be preserved for appellate review. *See* N.C. Gen. Stat. §§ 15A-1446(d)(5), (d)(18) (2003). We therefore address the merits of Defendant's argument.

[4] Section 15A-1340.14(f) of the North Carolina General Statutes requires a prior conviction to be proven by one of the following methods: (1) stipulation of the parties; (2) an original or copy of the court record of the prior conviction; (3) a copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts; or (4) any other method found by the court to be reliable. *See* N.C. Gen. Stat. § 15A-1340.14(f) (2003). "The State bears the burden of proving, by a preponderance of the evidence, that a prior conviction exists and that the offender before the court is the same person as the offender named in the prior conviction," and the State is required to "make all feasible efforts to obtain and present to the court the offender's full record." *Id.*

"There is no question that a worksheet, prepared and submitted by the State, purporting to list a defendant's prior convictions is, without more, insufficient to satisfy the State's burden in establishing proof of prior convictions." *State v. Eubanks,* 151 N.C. App. 499, 505, 565 S.E.2d 738, 742 (2002). Oral statements by defense counsel at sentencing regarding a prior level record worksheet, however, may constitute a stipulation to the existence of the convictions listed therein. *See id.; State v. Hanton,* 140 N.C. App. 679, 690, 540 S.E.2d 376, 383 (2000).

In *Hanton,* the State presented no evidence as to the defendant's prior convictions other than a prior record level worksheet and a computer printout. The following exchange then occurred:

[THE PROSECUTOR]: Mr. Hanton, by the State's reckoning, has 18 prior points, making him a Level 5.

. . . .

THE COURT: Mr. Farfour, with the exception of the kidnapping charge, is there any disagreement about the other convictions on there?

[THE DEFENSE ATTORNEY]: No, Your Honor.

THE COURT: All right.

*Id.* at 689, 540 S.E.2d at 382. The Court concluded that this colloquy "might reasonably be construed as an admission by defendant that he had been convicted of the other charges appearing on the prosecutor's work sheet." *Id.* at 690, 540 S.E.2d at 383.

Similarly, in *Eubanks*, the only evidence presented by the State was a prior record level worksheet purporting to list five prior convictions. Prior to the State's submission of the worksheet, the following colloquy occurred:

THE COURT: Evidence for the State?

[THE PROSECUTOR]: If Your Honor please, under the Structured Sentencing Act of North Carolina, the defendant has a prior record level of four in this case, Your Honor.

THE COURT: Do you have a prior record level worksheet?

[THE PROSECUTOR]: Yes, sir, I do.

THE COURT: All right. Have you seen that, Mr. Prelipp [attorney for defendant]?

MR. PRELIPP: I have, sir.

THE COURT: Any objections to that?

MR. PRELIPP: No, sir.

*Eubanks*, 151 N.C. App. at 504-05, 565 S.E.2d at 742. Reviewing the above-stated exchange, the Court held that the statements made by the defense counsel could "reasonably be construed as a stipulation by defendant that he had been convicted of the charges listed on the worksheet." In further support of its decision, the Court noted the defendant had "not asserted in his appellate brief that any of the prior convictions listed on the worksheet [did] not, in fact, exist." *Id.* at 506, 565 S.E.2d at 743.

**STATE v. MORGAN**

[164 N.C. App. 298 (2004)]

In the instant case, the following discussion took place regarding Defendant's prior convictions:

THE COURT: Are we ready for sentencing in this matter?

[THE PROSECUTOR]: Yes.

THE COURT: What are the prior record points of this defendant?

[THE PROSECUTOR]: We have a number of convictions on here. The first time would be a larceny case from 2/25/1983 in New Jersey. The next would be—no, excuse me. First in time was aggravated assault on a police officer out of New Jersey, that was in 1978, and we have a larceny in 1983 I just mentioned. There was a homicide in the third degree in New Jersey, that was 6/15/1987. We have a felony larceny that was mentioned on the stand from 6/3/93, and we have a 10/1/02 New Hanover County communicating threats. That happened while she was in jail. I also have, as best I can find out, the definition of homicide in New Jersey. I did not find the definition calling this third degree homicide. What I do have on the definition of homicide, manslaughter. It appears that New Jersey makes a distinction between homicide as an intentional act and manslaughter as an unintentional act. I have, therefore, and would contend that the homicide in the third degree cannot be any less than voluntary manslaughter, pursuant to North Carolina law. I don't think it's any more than that, but it certainly can't be any less than that and, as such, it's a Class F point value, assessed as Class F point value. That would give her a total of nine points.

THE COURT: Mr. Davis?

[THE PROSECUTOR]: Your Honor, if I can approach and hand that up to the court.

[DEFENSE COUNSEL]: Your Honor, I have gone over this with my client. We would contend that was an unintentional homicide. My client described that to me and, again, we don't have the equivalency here. We would contend it's unintentional. It would make it, perhaps, a lesser charge in terms of points that we assign.

THE COURT: So that you're contending that [Defendant] is a level three?

[DEFENSE COUNSEL]: Yes.

THE COURT: Rather than a level four?

[DEFENSE COUNSEL]: Yes.

[THE PROSECUTOR]: I have handed to the court—you may want to mark it for identification purposes, but I have handed to the court, as best I can find, the definition from New Jersey law from that period of time and, like I said, I've looked at it. I cannot find anything they call homicide in the third degree, but if you look through those definitions, homicide is a voluntary act and, if you go on through those definitions, they've got manslaughter defined as a reckless—so, again, I would contend anything defined in New Jersey as a homicide would be an intentional act and couldn't be any less than voluntary manslaughter. That's my argument. I would also—

THE COURT: Let counsel approach the bench, please.

(AN OFF-THE RECORD BENCH CONFERENCE WAS HELD.)

[DEFENSE COUNSEL]: I will defer to the court. My obligation is to give you what information I have, and I've done that, and whatever the court feels is appropriate, I have no—

THE COURT: Of course, sir. I was just looking at the statute. It appears to the court that involuntary manslaughter is a Class F. So if—and the worksheet shows that prior conviction, homicide conviction, up in New Jersey as—

[THE PROSECUTOR]: I counted it for F.

THE COURT: You've already counted it F; therefore the court is going to find that the prior record points of the defendant are nine.

We hold the comments by Defendant's attorney constituted a stipulation to the existence of the prior convictions listed on the worksheet submitted by the State. Defense counsel conceded the existence of the convictions by arguing that Defendant should be sentenced at a level III on the basis of her prior record. Defense counsel made no objection to the prior record level worksheet except to the number of points the third degree homicide conviction from New Jersey should receive. Defendant does not assert on appeal that any of the prior convictions listed on the worksheet do not exist. *Eubanks*, 151 N.C. App. at 506, 565 S.E.2d at 743. The State therefore presented sufficient evidence to show the existence of Defendant's prior convictions. *See id.*; *Hanton*, 140 N.C. App. at 689-90, 540 S.E.2d at 382-83.

[5] Although we conclude that Defendant stipulated to the existence of the prior convictions, such stipulation did not extend to whether the out-of-state offenses were substantially similar to the respective North Carolina offenses. *See Hanton*, 140 N.C. App. at 690, 540 S.E.2d at 383 (concluding that, although comments by the defense counsel "might be reasonably construed as an admission by defendant that he had been convicted of the other charges appearing on the prosecutor's work sheet," it was "not clear that defendant was stipulating that the out-of-state convictions were substantially similar" to North Carolina charges). Section 15A-1340.14 of the General Statutes, which addresses the classification of prior convictions from other jurisdictions, provides as follows:

> Except as otherwise provided in this subsection, a conviction occurring in a jurisdiction other than North Carolina is classified as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony, or is classified as a Class 3 misdemeanor if the jurisdiction in which the offense occurred classifies the offense as a misdemeanor. If the offender proves by the preponderance of the evidence that an offense classified as a felony in the other jurisdiction is substantially similar to an offense that is a misdemeanor in North Carolina, the conviction is treated as that class of misdemeanor for assigning prior record level points. If the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points. If the State proves by the preponderance of the evidence that an offense classified as a misdemeanor in the other jurisdiction is substantially similar to an offense classified as a Class A1 or Class 1 misdemeanor in North Carolina, the conviction is treated as a Class A1 or Class 1 misdemeanor for assigning prior record level points.

N.C. Gen. Stat. § 15A-1340.14(e) (2003). Here, the prior record level worksheet calculates Defendant as having three prior Class A1 or 1 misdemeanor convictions. At least one of the misdemeanor convictions is for the out-of-state misdemeanor offense of larceny. It is unclear from the record upon which of Defendant's prior convictions the two remaining misdemeanor convictions are based. According to section 15A-1340.14(e), out-of-state misdemeanor offenses are classified as Class 3 misdemeanors unless "the State proves by the prepon-

derance of the evidence that an offense classified as a misdemeanor in the other jurisdiction is substantially similar to an offense classified as a Class A1 or Class 1 misdemeanor in North Carolina." The State presented no evidence that the out-of-state misdemeanor offenses were substantially similar to offenses classified as Class A1 or Class 1 misdemeanors in North Carolina. The trial court therefore erred in sentencing Defendant based upon the prior record level worksheet assigning her prior out-of-state misdemeanor convictions as Class A1 or Class 1 misdemeanor convictions. We must therefore remand Defendant's case for resentencing.

Further, the prior record level worksheet assigned Defendant four points for her 1987 prior conviction in New Jersey of homicide in the third degree. In support of its assertion that the felony homicide conviction was substantially similar to the offense of voluntary manslaughter in North Carolina, the State presented a copy of the 2002 New Jersey homicide statute. Section 8-3 of the North Carolina General Statutes provides that a printed copy of a statute of another state is admissible as evidence of the statute law of such state. N.C. Gen. Stat. § 8-3(a) (2003); *State v. Rich,* 130 N.C. App. 113, 117, 502 S.E.2d 49, 52 (holding that copies of New Jersey and New York statutes, and comparison of their provisions to the criminal laws of North Carolina, were sufficient to prove by a preponderance of the evidence that the crimes of which the defendant was convicted in those states were substantially similar to classified crimes in North Carolina for purposes of section 15A-1340.14(e)), *disc. review denied,* 349 N.C. 237, 516 S.E.2d 605 (1998). The State presented no evidence, however, that the 2002 New Jersey homicide statute was unchanged from the 1987 version under which Defendant was convicted. Because the State failed to show that Defendant's prior conviction was substantially similar to an offense in North Carolina classified as a Class I felony or higher, the trial court erred in sentencing Defendant based upon the prior record level worksheet classifying Defendant's out-of-state felony as a Class F. *See Hanton,* 140 N.C. App. at 690, 540 S.E.2d at 383. However, "[i]n the interests of justice, both the State and defendant may offer additional evidence at the resentencing hearing." *Id.*

### IV. *Motion to Suppress*

[6] By her final assignment of error, Defendant contends the trial court erred in allowing Detective Horton to read to the jury the statement made to him by Maddox concerning the assault. Defendant contends the statement did not corroborate the testimony given by

Maddox and was therefore inadmissible. We disagree. We have reviewed the alleged inconsistencies between the testimony given by Maddox and the information contained in his statement, and conclude they are but "slight variations [that did] not render the statements inadmissible." *State v. Martin*, 309 N.C. 465, 476, 308 S.E.2d 277, 284 (1983). The trial court did not err in admitting the statement by Maddox as corroborative evidence.

In summary, we conclude there was no error in Defendant's conviction of assault with a deadly weapon inflicting serious injury, but the case must be remanded to the Superior Court of New Hanover County for resentencing.

No error, remanded for resentencing.

Judges CALABRIA and STEELMAN concur.