**STATE v. MARLOW**

[229 N.C. App. 593 (2013)]

STATE OF NORTH CAROLINA
v.
BENJAMIN SCOTT MARLOW

No. COA13-18

Filed 17 September 2013

**1. Evidence—stipulations—not ambiguous—not prejudicial—no plain error**

The trial court did not commit plain error in a first-degree rape case by admitting two stipulations after the close of the State's case-in-chief. Assuming arguendo, that stipulations can be reviewed for plain error, the stipulations were not ambiguous and did not have a probable impact on the jury's findings.

**2. Sentencing—statutory rape—incest—not lesser-included offense**

The trial court erred by sentencing defendant for two crimes, statutory rape and incest, which arose out of the same transaction, thereby violating his constitutional rights by subjecting him to double jeopardy. The elements of statutory rape are not all included in the elements of incest and 2002 amendments to N.C.G.S. § 14-178 did not make statutory rape a lesser-included offense of incest.

**3. Sentencing—colloquy with defendant—unnecessary**

The trial court did not err in a rape case by sentencing defendant as a Prior Record Level II before conducting a statutorily mandated colloquy with defendant. Given the routine determination as to whether defendant was convicted of possession of drug paraphernalia while on probation for another offense, conducting such questioning with defendant would have been inappropriate and unnecessary.

**4. Satellite-Based Monitoring—first-degree rape—use of force**

The trial court did not improperly order defendant to enroll in lifetime satellite-based monitoring upon release from imprisonment. Defendant was convicted of first-degree rape, which necessarily involves the use of force.

Appeal by defendant from judgments entered on 29 June 2012 by Judge Timothy S. Kincaid in Cleveland County Superior Court. Heard in the Court of Appeals 14 August 2013.

*Attorney General Roy Cooper, by Assistant Attorney General John F. Oates, Jr., for the State.*

*Michael E. Casterline for defendant appellant.*

McCULLOUGH, Judge.

Benjamin Scott Marlow ("defendant") appeals from his convictions for first-degree rape (four counts), indecent liberties with a child (four counts), first-degree sex offense with a child (four counts), and incest (two counts) on the following grounds: (1) the trial court committed plain error when it read stipulations into the record that were neither definite nor certain; (2) the trial court subjected defendant to double jeopardy when it sentenced defendant for both statutory rape and incest because statutory rape is a lesser included offense of incest; (3) the trial court failed to follow the statutory mandate in calculating defendant's prior record level; and (4) the trial court erroneously ordered defendant to enroll in lifetime satellite-based monitoring ("SBM") when it found aggravating factors warranting such an imposition. For the following reasons, we find no error.

## I. Background

Prior to the summer of 2010, defendant had been living with his father. During late summer of 2010, when defendant was twenty-one years of age, he went to live with his mother and her three daughters, T.A., P.A., and S.A.[1] Because defendant's mother had the children with a man who was not the biological father of defendant, they are his half-sisters. At the time defendant moved in, all of the daughters were 11 years of age or younger.

During defendant's brief tenancy at his mother's house, he became close with his half-sisters. Due to the small size of the house, the living arrangements were such that defendant had to sleep in the living room or the dining room. T.A. and P.A. had their own bedrooms, and S.A. slept in the dining room. The daughters enjoyed having defendant in the house; and when defendant was not working, he would sometimes play games and watch television with the girls.

Throughout the next few months, defendant began inappropriately touching P.A. and T.A. On one occasion, T.A. had come home from

---

1. Because the three daughters were all minors during the commission of the crimes, pseudonyms are used to protect their identities.

trick-or-treating and was watching television with defendant. Around 11:00 p.m., T.A.'s parents told her to go to bed. T.A. then asked that defendant go to her room and cover her up, and defendant agreed. Defendant then lay down with T.A. Sometime thereafter, defendant began to rub T.A.'s leg. He later placed his hand inside of her pants, but over her underwear, and then on her buttocks, inside of her underwear. Before moving out in early 2011, defendant also came into similar contact with P.A., T.A.'s twin sister.

On "fifteen or twenty" more occasions, defendant initiated similar contact with T.A. T.A. testified that defendant continued to get into her bed late at night, place his hands down her pants, and that he began putting his hand up her shirt. T.A. testified that defendant even began placing his finger inside her vagina, causing her discomfort or pain. T.A. also testified that on multiple occasions defendant began rubbing his penis outside of her vagina, and eventually inserted his penis inside of her vagina. The act of defendant placing his penis inside of T.A.'s vagina happened in various places, including multiple times outside in the woods, as well as in the living room.

T.A. also testified that defendant would force T.A. to put his penis inside of her mouth by grabbing her head and telling her to lick his penis. T.A. testified that when this happened, defendant would not ejaculate in her mouth. She knew this because she would see him manipulate his penis and wipe the "white liquid" on his shirt. On other occasions when defendant would insert his penis into T.A.'s mouth, he would ejaculate. The act of defendant placing his penis inside T.A.'s mouth occurred "five to ten times." At some point after Halloween, T.A. testified that defendant also penetrated her anus with his penis. According to T.A., the anal penetration "hurt worse than him putting his finger in my vagina, but it hurt just about the same as when he put his penis in my vagina."

Throughout defendant's stay, he was able to convince T.A. not to say anything about the aforesaid incidents, because if she did, "he would never get to see her again." However, on 1 March 2011, T.A. reported to a counselor at school that her brother had been touching her private parts and that she was forced to touch his as well. The counselor then contacted the Department of Social Services so a social worker could conduct interviews of T.A. and P.A. Then, on 4 March 2011, a detective from the sheriff's department interviewed T.A. and P.A. and recorded the interviews on DVD. T.A. and P.A. were then examined by a pediatrician who specialized in observing signs of physical and sexual abuse. Upon examination, the pediatrician opined that T.A.'s hymen and anus

appeared to have been penetrated with a finger or other object. The pediatrician did not report similar findings for P.A.

On 21 March 2011, the sheriff's detective interviewed defendant about the information they received. On 11 April 2011, defendant was indicted for a sex offense against T.A., leading to his arrest just ten days later. Defendant was eventually indicted and charged with a total of fourteen sex offenses; thirteen against T.A. and one against P.A.

Prior to trial, defendant filed several motions, including a motion to suppress an interview with the sheriff's detective, a motion to have defendant examined for mental capacity, and other motions concerning evidentiary issues. Also prior to trial, defendant agreed to stipulate to his age and his relationship with the alleged victims. Specifically, defendant stipulated that he was twenty-one years of age during the time the alleged events took place, and that he was the half-brother of the alleged victims because they shared a common parent, their mother. At trial, no objections were made when the stipulations were read to the jury.

During the State's case-in-chief, the State introduced testimony from T.A., P.A., the school counselor, the social worker who initially interviewed the daughters, the pediatrician who examined them, and the sheriff's detective who conducted an interview of defendant. Defendant chose not to testify at trial. Following the close of the State's evidence, the jury deliberated for approximately forty-five minutes before returning guilty verdicts for all fourteen charged sex offenses.

During sentencing, the trial court inquired about defendant's prior record. Defendant stipulated that he was previously convicted of possession of drug paraphernalia while he was on unsupervised probation for underage possession of alcohol. The stipulation resulted in his classification as a Prior Record Level II. Defendant was then sentenced within the presumptive range to consecutive terms, totaling a minimum of 1,356 months' imprisonment to a maximum of 1,686 months' imprisonment. In addition to the consecutive terms of imprisonment, the trial court found aggravating factors and ordered defendant to enroll in lifetime SBM upon release from prison.

## II.  The Trial Court's Acceptance of Agreed Upon Stipulations

[1] Defendant's first argument on appeal is that the trial court committed plain error in admitting two stipulations after the close of the State's case-in-chief. We disagree.

As a part of the adversarial nature of our legal system, parties have an obligation to raise objections to errors at the trial level. *State v. Oliver,*

309 N.C. 326, 334, 307 S.E.2d 304, 311 (1983); *see also State v. Walker*, 316 N.C. 33, 37, 340 S.E.2d 80, 82 (1986) (holding that unless a party makes a timely objection, errors will not be preserved for appellate review). To hold otherwise would place "an undue if not impossible burden . . . on the trial judge." *State v. Black*, 308 N.C. 736, 740, 303 S.E.2d 804, 806 (1983). As such, it holds true that even errors of constitutional magnitude that are not preserved for appellate review will not be addressed on appeal. *State v. Smith*, 352 N.C. 531, 557-58, 532 S.E.2d 773, 790 (2000).

However, in recognizing the rigidity of this procedural requirement, we have reviewed unpreserved issues on appeal in special circumstances. Rule 10(a)(4) of the North Carolina Rules of Appellate Procedure states that,

> [i]n criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C.R. App. P. 10(a)(4) (2011).

Our Supreme Court has described the concept of "plain error" as follows:

> "[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has '"resulted in a miscarriage of justice or in the denial to appellant of a fair trial"' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.' "

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)) (footnotes omitted). However, because it is to be applied cautiously, "[t]he adoption of the 'plain error' rule does not mean that every [error] . . .

mandates reversal regardless of the defendant's failure to object at trial." *Odom*, 307 N.C. at 660, 300 S.E.2d at 378; *see also State v. Greene*, 351 N.C. 562, 566-67, 528 S.E.2d 575, 578 (2000) (refusing to extend the plain error analysis to anything but jury instructions and evidentiary matters).

Turning to the facts of the case *sub judice*, while the law is clear on when our courts are permitted to use the plain error analysis, it is not clear whether stipulations fall within the purview of such parameters. Assuming *arguendo*, that stipulations can be reviewed for plain error, we nonetheless find no error. "It is well-established that stipulations are acceptable and desirable substitutes for proving a particular act." *State v. Watson*, 303 N.C. 533, 538, 279 S.E.2d 580, 583 (1981). There is no particular form that stipulations must have, but they " 'must be definite and certain in order to afford a basis for judicial decision, and it is essential that they be assented to by the parties or those representing them.' " *State v. Alexander*, 359 N.C. 824, 828, 616 S.E.2d 914, 917 (2005) (quoting *State v. Powell*, 254 N.C. 231, 234, 118 S.E.2d 617, 619 (1961)).

Defendant contends that two stipulations to which both parties agreed, and to which neither objected, were ambiguous, and therefore created such a potential for confusion that they had a probable impact on the outcome of the trial. The first fact to which the parties stipulated was defendant's date of birth. At the conclusion of the State's case-in-chief, the jury was instructed that "Benjamin Scott Marlow[] was born July 5, 1989, and at all times during the events that took place between August 28, 2010, and December 26, 2010 the defendant was 21 years of age." The second fact to which the parties stipulated, which defendant also contends was ambiguous and prejudicial, is defendant's relationship to the alleged victims. The stipulation states that "defendant is the half-brother of the named victims, [P.A.] and [T.A.], in these matters and in that they share a mother and have different fathers."

As to the first stipulation, defendant contends that the inclusion of "at all times during the events that took place" was superfluous and ambiguous. Defendant argues that, since his theory of the case was that the events did not take place, the stipulation creates an ambiguity by essentially admitting that the alleged events did take place. Additionally, defendant argues that the inclusion of "named victims" in the second stipulation was improper because it necessarily implies (1) that the alleged victims were victimized, and (2) there were potentially unnamed victims.

In *State v. Lawrence*, our Supreme Court recently clarified the holding in *Odom*, 307 N.C. 655, 300 S.E.2d 375, holding that, while an

erroneous instruction had been given, it did not amount to plain error because "[t]he evidence against [the] defendant is overwhelming. The record contains testimony by multiple witnesses describing the efforts of the group . . . ." 365 N.C. 506, 519, 723 S.E.2d 326, 334-35 (2012). Further, the Court went on to state that the defendant failed to show prejudice because he did not show that had the error not been committed, a different result would have been reached; therefore the error did not affect "the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 519, 723 S.E.2d at 335.

Similar to our Supreme Court's holding in *Lawrence,* upon review of the whole record, and in light of the fact that the stipulations were not read to the jury until after the State closed its case-in-chief, we are hard-pressed to see how the inclusion of the quoted material in the stipulations had any impact on the jury's findings. Indeed, throughout the trial, the State presented an overwhelming amount of evidence about the alleged acts that took place by having both T.A. and P.A. testify. To corroborate their testimony, the State presented testimony from a social worker, Carolyn Freeman; a pediatrician, Dr. Nancy Hendrix; and a schoolteacher, Joanna Runyon. In addition, and similar to *Lawrence,* all of this evidence was uncontroverted because the defendant chose not to testify. Accordingly, we hold that the stipulations were not ambiguous and did not have a probable impact on the jury's findings, and therefore their admission was not plainly erroneous.

### III. Sentencing Defendant for Statutory Rape and Incest

[2] Defendant's second argument on appeal is that the trial court erred in sentencing defendant for two crimes, statutory rape and incest, which arose out of the same transaction, thereby violating his constitutional rights by subjecting him to double jeopardy. We disagree.

The Supreme Court of the United States has held that, absent clear and unequivocal legislative intent to the contrary, a defendant may not be punished twice for the same crime. *Missouri v. Hunter,* 459 U.S. 359, 74 L. Ed. 2d 535 (1983). In order to determine if two crimes are the "same" the Supreme Court stated that "the test to be applied . . . is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 76 L. Ed. 306, 309 (1932).

In *State v. Etheridge,* our Supreme Court stated that "incest, which requires proof of a familial relationship, is not a lesser included offense of statutory rape[.]" 319 N.C. 34, 51, 352 S.E.2d 673, 683 (1987). As such, the Court held that, despite the fact that multiple crimes all arose from the same transaction, the defendant's rights against double jeopardy

were not violated because "the convictions of statutory rape, taking indecent liberties with a child, and incest . . . are legally separate and distinct crimes, none of which is a lesser included offense of another." *Id.*

Defendant does not disagree that *Etheridge* was properly decided at the time the case was heard. However, defendant contends that, since *Etheridge*, a 2002 amendment to N.C. Gen. Stat. § 14-178(b)(1)(a) renders *Etheridge* inapplicable. For the following reasons, we disagree.

Under North Carolina law, one is guilty of statutory rape "if the person engages in vaginal intercourse: (1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]" N.C. Gen. Stat. § 14-27.2(a)(1) (2011). In addition, one is guilty of incest if "the person engages in carnal intercourse with the person's (i) grandparent or grandchild, (ii) parent or child or stepchild or legally adopted child, (iii) brother or sister of the half or whole blood[.]" N.C. Gen. Stat. § 14-178(a) (2011).

Using the analysis set forth in *Blockburger*, it is clear that the elements of statutory rape are not all included in the elements of incest, since statutory rape requires a showing of the victim's and the defendant's age, while the elements of incest can be proven without any reference to age, and incest requires a familial relationship that is not required for one to be convicted of statutory rape. Therefore, since one can be convicted of incest without also necessarily satisfying the elements of statutory rape, statutory rape is not a lesser included offense of incest.

However, defendant argues that the 2002 amendments to N.C. Gen. Stat. § 14-178 made statutory rape a lesser included offense of incest. We disagree. As amended, the elements of incest remained unchanged following the amendment. *See* N.C. Gen. Stat. § 14-178(a) (2011). The legislature did, however, add a punishment and sentencing scheme which provides:

> (1) A person is guilty of a Class B1 felony if . . . :
>
> a. The person commits incest against a child under the age of 13 and the person is at least 12 years old and is at least four years older than the child when the incest occurred.

N.C. Gen. Stat. § 14-178(b)(1)(a). Defendant is correct in asserting that the elements of statutory rape are all included within subsection (b). However, the argument that makes statutory rape a lesser included offense of incest is flawed since the punishment and sentencing subsection of incest is only applicable after the elements of incest have been

established. Therefore, *Etheridge* has not been abrogated by the 2002 statutory amendment, and statutory rape is not a lesser included offense of incest. Defendant's argument is overruled.

## IV. Defendant's Stipulations to Prior Record Level

**[3]** Defendant's third argument on appeal is that the trial court erred in sentencing defendant as a Prior Record Level II before conducting a statutorily mandated colloquy with defendant. We disagree.

The calculation of prior record points, whether stipulated to or found by a jury, is dictated by N.C. Gen. Stat. § 15A-1340.14, which states that a prior record point may be assigned "[i]f the offense was committed while the offender was on supervised or unsupervised probation, parole, or post-release supervision, or while the offender was serving a sentence of imprisonment, or while the offender was on escape from a correctional institution while serving a sentence of imprisonment[.]" N.C. Gen. Stat. § 15A-1340.14(b)(7) (2011). While a jury may determine the existence of prior points, subsection (f)(1) allows proof of prior convictions by stipulation of the parties. N.C. Gen. Stat. § 15A-1340.14(f)(1).

In all of the cases involving a probation point resulting from a (b)(7) offense, generally a court shall first determine under N.C. Gen. Stat. § 15A-1022(a) that the defendant is making an informed choice in admitting the existence of an aggravating sentencing factor. N.C. Gen. Stat. § 15A-1022(a) (2011). Furthermore, N.C. Gen. Stat. § 15A-1022.1(b) provides:

> [T]he court shall address the defendant personally and advise the defendant that:
>
> (1) He or she is entitled to have a jury determine the existence of any aggravating factors or points under G.S. 15A-1340.14(b)(7); and
>
> (2) He or she has the right to prove the existence of any mitigating factors at a sentencing hearing before the sentencing judge.

N.C. Gen. Stat. § 15A-1022.1(b) (2011).

However, while a Court is usually required to follow the procedural requirements when a prior record point is found under N.C. Gen. Stat. § 15A-1340.14(b)(7), N.C. Gen. Stat. § 15A-1022.1(e) excepts such requirements when "the context clearly indicates that they are inappropriate." N.C. Gen. Stat. § 15A-1022.1(e).

In reviewing the circumstances under which defendant's prior record was stipulated, we hold that conducting such questioning with defendant would have been inappropriate and unnecessary. After the jury returned the verdicts, the State moved to sentence defendant as a Prior Record Level II, in that he was convicted of possession of drug paraphernalia on 7 January 2008 and was on probation at that time for another offense. After asking defense counsel if they had a chance to review the prior record level and have a discussion with defendant, defense counsel responded "[h]e did [stipulate], yes, sir." Defense counsel had the opportunity to inform defendant of the repercussions of conceding certain prior offenses and defendant had the opportunity to interject had he not known such repercussions. Yet, even after being informed, defendant neither objected to nor hesitated when asked about such convictions. With such a routine determination as to whether defendant was convicted of possession of drug paraphernalia while on probation for another offense, we see no reason to have engaged in an extensive colloquy with defendant. No error.

## V. The Imposition of Lifetime SBM

[4] Defendant's fourth and final argument on appeal is that the trial court improperly ordered defendant to enroll in lifetime SBM upon release from imprisonment. We disagree.

> In evaluating the lawfulness of a trial court order requiring a convicted defendant to enroll in SBM, we review the trial court's findings of fact to determine whether they are supported by competent record evidence, and we review the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found.

*State v. Clark*, 211 N.C. App. 60, 70, 714 S.E.2d 754, 761 (2011) (internal quotations marks and citations omitted), *disc. review denied*, ___ N.C. ___, 722 S.E.2d 595 (2012).

A court shall order lifetime SBM when "the offender has been classified as a sexually violent predator, is a recidivist, has committed an aggravated offense, or was convicted of G.S. 14-27.2A or G.S. 14-27.4A . . . ." N.C. Gen. Stat. § 14-208.40A(c) (2011). In the case *sub judice*, defendant was ordered to enroll in lifetime SBM because the trial court found that defendant committed an aggravated offense.

An aggravated offense is statutorily defined as

> any criminal offense that includes either of the following:
> (i) engaging in a sexual act involving vaginal, anal, or oral
> penetration with a victim of any age through the use of
> force or the threat of serious violence; or (ii) engaging in a
> sexual act involving vaginal, anal, or oral penetration with
> a victim who is less than 12 years old.

N.C. Gen. Stat. § 14-208.6(1a) (2011).

Defendant was charged with, and convicted of, first-degree rape, under N.C. Gen. Stat. § 14-27.2(a), which states that

> (a)  A person is guilty of rape in the first degree if the
> person engages in vaginal intercourse:
>
> (1)  With a victim who is a child under the age of 13
>      years and the defendant is at least 12 years old
>      and is at least four years older than the victim; or
>
> (2)  With another person by force and against the will
>      of the other person, and:
>
>      a.  Employs or displays a dangerous or deadly
>          weapon or an article which the other per-
>          son reasonably believes to be a dangerous or
>          deadly weapon; or
>
>      b.  Inflicts serious personal injury upon the vic-
>          tim or another person; or
>
>      c.  The person commits the offense aided and
>          abetted by one or more other persons.

N.C. Gen. Stat. § 14-27.2(a) (2011).

"[I]n determining whether a defendant's conviction offense qualifies as an 'aggravated offense' for purposes of N.C. Gen. Stat. § 14-208.40A, the trial court is only permitted to consider the elements of the offense for which the defendant has been convicted and 'is not to consider the underlying factual scenario giving rise to the conviction.' " *Clark*, 211 N.C. App. at 72, 714 S.E.2d at 762 (quoting *State v. Davison*, 201 N.C. App. 354, 360, 689 S.E.2d 510, 515 (2009), *disc. review denied*, 364 N.C. 599, 703 S.E.2d 738 (2010)). Stated otherwise, without looking at the underlying factual scenario, a court must first find (1) that a sexual act involving penetration occurred; *and* (2) that sexual penetration involved force or

the threat of serious violence or a victim under the age of twelve in order to impose lifetime SBM on the basis of an aggravated offense.

For the following reasons, we hold that the imposition of lifetime SBM was appropriate. Without engaging in an improper examination of the underlying facts giving rise to the crimes for which defendant was convicted, the trial court could have ascertained that both vaginal penetration and force were involved. In *Clark*, as in the case before us, the defendant was convicted of first-degree rape, which requires a showing that the defendant engaged in vaginal intercourse with the victim. 211 N.C. App. at 73, 714 S.E.2d at 762-63, stating that ("Unlike the various conviction offenses at issue in the cases upon which [the] Defendant relies . . . obtaining a first degree rape conviction pursuant to N.C. Gen. Stat. § 14-27.2(a)(1) requires proof that a defendant 'engage[d] in vaginal intercourse' with [the] victim, as compared to some other form of inappropriate contact.") (citation omitted).

Defendant in this case meets the first prong of the test as first-degree rape by its elements requires vaginal penetration. Nevertheless, defendant argues that this Court's holding in *State v. Treadway*, 208 N.C. App. 286, 702 S.E.2d 335 (2010), renders the trial court's imposition of lifetime SBM erroneous. In *Treadway*, we held that the imposition of lifetime SBM was inappropriate because "first degree sexual offense pursuant to N.C. Gen. Stat. § 14-27.4(a)(1) does not qualify as an aggravated offense." *Id.* at 301, 702 S.E.2d at 348. This Court reasoned that a first-degree sexual offense only requires the victim to be under 13, while an aggravated offense requires the victim to be under 12. Therefore, without considering the underlying factual scenario, the trial court could not have upheld the conviction based off the age prong of N.C. Gen. Stat. § 14-208.6(1a). *Id.*; *see also State v. Phillips*, 203 N.C. App. 326, 330, 691 S.E.2d 104, 108 (2010) stating that ("Since 'a child less than 16 years' is not necessarily also 'less than 12 years old,' without looking at the underlying facts, a trial court could not conclude that a person convicted of felonious child abuse . . . committed that offense against a child less than 12 years old.").

However, defendant's reliance on *Treadway* is misplaced. While it is true that without examining the underlying factual scenario of the case *sub judice*, the trial court could not have determined that the victim was under the age of 12. Therefore the imposition of lifetime SBM could not be sustained on that basis alone and does not foreclose the imposition of lifetime SBM altogether. Similar to *Treadway*, defendant in the case *sub judice* was charged with engaging in a sexual act with a victim who is under the age of thirteen. However, in *Treadway*, 208 N.C. App.

STATE v. MARLOW

[229 N.C. App. 593 (2013)]

at 301, 702 S.E.2d at 347, we did not consider the "force prong" of the statute, quoting that ("The State did not allege in the indictment, nor did it provide evidence at trial, that [the] defendant was guilty of first degree sexual offense under N.C. Gen. Stat. § 14-27.4(a)(2), which requires use of force and . . . infliction of serious personal injury . . . . Accordingly, our holding is limited to N.C. Gen. Stat. § 14-27.4(a)(1).").

As already discussed, the imposition of lifetime SBM is appropriate when the commission of a sexual act of penetration involves the use of force or threat of serious violence. N.C. Gen. Stat. § 14-208.6(1a). After *Treadway* was decided, in *Clark*, we held that "because we believe that the act of vaginal intercourse with a person under the age of 13 necessarily involves the use of force or the threat of serious violence . . . first degree rape fit[s] within the definition of aggravated offense as is required by *Davison* and its progeny." 211 N.C. App. at 74, 714 S.E.2d at 763 (internal quotation marks omitted). Therefore, despite the fact that the defendant in *Clark* was convicted of N.C. Gen. Stat. § 14-27.2(a)(1), we upheld the imposition of lifetime SBM on the basis that we believed force was necessarily used in the commission of the rape.

Unlike *Treadway*, defendant in the case *sub judice* was convicted of first-degree rape, as opposed to a first-degree sexual offense not involving vaginal penetration. Therefore, *Treadway* is distinguished from *Clark* and this case now on appeal. While defendant in this case was convicted of N.C. Gen. Stat. § 14-27.2(a)(1), since we have previously determined that such a conviction necessarily involves the use of force, the trial court was presented with sufficient evidence to not only conclude that sexual penetration occurred, but that such penetration was achieved by the use of force. Accordingly, we hold that the imposition of lifetime SBM was not erroneous.

## VI. Conclusion

For the aforementioned reasons, we hold that the trial court committed no error.

No error.

Judges HUNTER (Robert C.) and GEER concur.