STROUD, Judge.
Defendant appeals his judgments for sexually related crimes committed against his stepchild. On or about 4 October 2017, defendant was convicted of indecent liberties with a child, incest with a child, and rape of a child. Defendant appealed and makes one substantive and one procedural argument. Because the trial court correctly allowed expert opinion testimony regarding the child's physical condition and accepted defendant's stipulation of an aggravating factor, we find no error on these issues. But since the aggravating factor was also an element of the crime of incest, it should not have been used as an aggravating factor in sentencing defendant on the incest conviction, so we remand for resentencing with proper application of the aggravating factor.
I. Background
Defendant was the stepfather of the minor child Jane.[1] Jane went to sleep and awoke to defendant raping her. Defendant was indicted for rape of a child by an adult, incest with a person who is under 13 when defendant is at least four years older than the person, and taking indecent liberties with a child. A jury found defendant guilty of all three charges, and the trial court sentenced defendant to imprisonment for consecutive sentences of a minimum of 345 to a maximum of 474 months for rape; a minimum of 345 months to a maximum of 474 months for incest; and a minimum of 23 months to a maximum of 37 months for indecent liberties. Each sentence is within the aggravated range. Defendant appeals.
II. Expert Opinion Testimony
Defendant first argues the trial court erred by admitting expert testimony that Jane's physical condition was consistent with "sexual assault."
When reviewing the ruling of a trial court concerning the admissibility of expert opinion testimony, the standard of review is whether the trial court committed an abuse of discretion. An abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.
Sneed v. Sneed , --- N.C. App. ----, --- S.E.2d ---- (2018) (citations and quotation marks omitted).
During defendant's trial the Sexual Assault Nurse Examiner testified about specific physical findings on Jane's body and stated that in her expert opinion Jane's physical condition was consistent with "sexual assault." Defendant's substantive argument is that "the trial court erred in admitting the testimony of the nurse examiner when she opined that the physical findings were consistent with sexual assault." (Original in all caps.) Defendant contends that "without a proper foundation" the nurse examiner's use of the word "assault" offered "an opinion as to a legal conclusion about a legal-term-of-art which carries a specific legal meaning[,]" and thus her opinion was improperly admitted.
The nurse examiner testified that Jane's physical trauma was consistent with the assault Jane had described. In State v. Aguallo , our Supreme Court held similar testimony to be permissible:
By defendant's second assignment of error, he contends that the pediatrician's testimony that the results of the physical examination were consistent with the victim's pre-examination statement was a comment on the victim's truthfulness or the guilt or innocence of defendant. We disagree.
"Dr. Sinal, who performed a complete examination of the victim, testified that there had been a 'lacerational cut' in the hymen area of the child. When asked if the findings from the physical examination were consistent with what the child had told her, the doctor responded affirmatively. At a later time during direct examination, the prosecutor again asked the doctor if, in her opinion, the lacerations and adhesions she found were consistent with what the child had told her. Over objection she responded, 'I felt it was consistent with her history.'
Defendant relies on a line of cases in which this Court has held it reversible error for medical experts to testify as to the veracity of the victim. This Court has found reversible error when experts have testified that the victim was believable, had no record of lying, and had never been untruthful. This case, however, is distinguishable.
Essentially, the doctor testified that the physical trauma revealed by her examination of the child was consistent with the abuse the child alleged had been inflicted upon her. We find this vastly different from an expert stating on examination that the victim is 'believable' or 'is not lying.' The latter scenario suggests that the complete account which allegedly occurred is true, that is, that this defendant vaginally penetrated this child. The actual statement of the doctor merely suggested that the physical examination was consistent with some type of penetration having occurred. The important difference in the two statements is that the latter implicates the accused as the perpetrator of the crime by affirming the victim's account of the facts. The former does not.
The statement of the doctor only revealed the consistency of her findings with the presence of vaginal trauma. This expert opinion did not comment on the truthfulness of the victim or the guilt or innocence of defendant. The questions and answers were properly admitted to assist the jury in understanding the results of the physical examination and their relevancy to the case being tried. "
State v. Aguallo , 322 N.C. 818, 822-23, 370 S.E.2d 676, 678 (1988) (emphasis added).
Defendant further argues that the witness's use of the word "assault" here takes this case beyond those which have approved expert testimony because "assault" has a technical legal meaning. But taken in context here, it is apparent that the witness used the word in the colloquial sense. The nurse examiner was describing abrasions and injuries she saw on Jane's body. Defendant was not charged with a crime which is termed as an "assault" and "assault" in a technical legal sense is not an element of any of the charges. If the expert had used the words "sexual activity" instead of "sexual assault," the meaning would be exactly the same in this context.
And even if we generously assume arguendo that the nurse examiner exceeded the scope of expert testimony by using the word "assault," this evidence was not prejudicial considering the other evidence against defendant. Jane gave extensive detailed testimony of defendant raping her; there was sperm consistent with defendant's DNA on the vaginal swab taken from Jane; sperm consistent with defendant's DNA was found on Jane's underwear, and there were numerous trauma-related physical indications on Jane's body. See State v. Carr , 61 N.C. App. 402, 410, 301 S.E.2d 430, 436 (1983) ("Even if we were to hold that the trial court erroneously admitted this testimony over defendant's subsequent objection, its admission did not constitute prejudicial error. An error is only prejudicial if there is a reasonable possibility that a different result would have occurred at trial if the error had not been committed."). This argument is without merit.
III. Aggravating Factor
Defendant's procedural argument is that "the trial court erred by failing to comply with N.C. Gen. Stat. § 15A-1022.1 when the court accepted defense counsel's stipulation to an aggravating factor without ascertaining that the admission was the informed choice of the defendant." (Original in all caps.) "Alleged statutory errors are questions of law, and as such, are reviewed de novo ." State v. Mackey , 209 N.C. App. 116, 120, 708 S.E.2d 719, 721 (2011) (citations omitted).
Here, defendant's counsel stipulated to the aggravating factor that "[t]he defendant took advantage of a position of trust or confidence, including a domestic relationship, to commit the offense." North Carolina General Statute § 15A-1022.1 mandates that a colloquy is required "unless the context clearly indicates that they are inappropriate." N.C. Gen. Stat. § 15A-1022.1 (2017). On this same issue, in State v. Marlow , this Court determined,
In reviewing the circumstances under which defendant's prior record was stipulated, we hold that conducting such questioning with defendant would have been inappropriate and unnecessary. After the jury returned the verdicts, the State moved to sentence defendant as a Prior Record Level II, in that he was convicted of possession of drug paraphernalia on 7 January 2008 and was on probation at that time for another offense. After asking defense counsel if they had a chance to review the prior record level and have a discussion with defendant, defense counsel responded "he did stipulate, yes, sir." Defense counsel had the opportunity to inform defendant of the repercussions of conceding certain prior offenses and defendant had the opportunity to interject had he not known such repercussions. Yet, even after being informed, defendant neither objected to nor hesitated when asked about such convictions. With such a routine determination as to whether defendant was convicted of possession of drug paraphernalia while on probation for another offense, we see no reason to have engaged in an extensive colloquy with defendant.
229 N.C. App. 593, 602, 747 S.E.2d 741, 748 (2013) (brackets omitted). Here, defendant was Jane's stepfather and he was also convicted of incest in the same trial due to his relationship to Jane. Defendant could not have been convicted of incest unless the jury had determined that he was, on these facts, her stepparent. See generally N.C. Gen. Stat. § 14-178 (2015). While it is true that not all parents or stepparents are in a "caretaking" relationship with their child, here, defendant testified in his own defense about his close relationship with Jane:
It was like relationship between a daughter and [ ] a father. I would take care of them. I would take them to the park. I would take them to Charlotte. Once we went together to Beldoso, Georgia. I'd take them up to the mountains. We'd play around and driving in the truck we'd -- sometimes we'd listen to music together and even sing. And [Jane] would say that she didn't like the way I would sing. So she would hear me sing and she would say, dad.
The trial court asked if defendant stipulated to the caretaking relationship aggravating factor, and as in Marlow , "[d]efense counsel had the opportunity to inform defendant of the repercussions of conceding certain prior offenses and defendant had the opportunity to interject had he not known such repercussions." Id. Also, as in Marlow , "we see no reason to have engaged in an extensive colloquy with defendant" regarding the aggravated factor of being a caretaker. Id. All of the evidence demonstrated defendant was Jane's stepfather, and he testified that he took care of Jane and had a father-daughter relationship with her. This argument is overruled.
But use of the aggravating factor also presents another issue noted by the State's brief. The State appropriately acknowledges that defendant should not have been convicted within the aggravated range for his crime of incest because the factor of being in "a position of trust or confidence, including a domestic relationship, to commit the offense[,]" N.C. Gen. Stat. § 15A-1022.1, was an element of the crime of incest. See N.C. Gen. Stat. § 14-178 ; State v. Hughes , 114 N.C. App. 742, 745, 443 S.E.2d 76, 78 (1994) ("We first address defendant's arguments regarding sentencing. The trial court found, as the sole factor in aggravation of the incest and indecent liberties convictions, that defendant took advantage of a position of trust or confidence in order to commit the offenses. Defendant contends that these findings were error. As to the incest conviction, we agree. Evidence necessary to prove an element of an offense may not be used to prove a factor in aggravation. The crime of felonious incest has as an element that the defendant and the other participant be related in one of three enumerated familial ways, including parent-child. Thus, to prove one element of the offense in the case at hand, it was necessary to establish the parent-child relationship. The trial court then used the evidence of this relationship to find that defendant took advantage of a position of trust or confidence. This was error, and the conviction for incest must therefore be remanded for a new sentencing hearing."). Because defendant was erroneously sentenced in the aggravated range for incest based upon the aggravating factor of the caretaking relationship, we remand for resentencing. But as no colloquy was required in this case, use of the aggravating factor for the other convictions was not error. Because we do not know what weight the trial court gave to the aggravating factor and if eliminating this factor as to incest would have any effect upon the other sentences, we remand for resentencing on all three convictions with proper application of the aggravating factor.
IV. Conclusion
For the foregoing reasons, we conclude there was no error in defendant's trial but remand for resentencing.
NO ERROR; REMANDED for RESENTENCING.
Report per Rule 30(e).
Judges DIETZ and MURPHY concur.

A pseudonym is used to protect the minor involved.