IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-326

Filed 07 February 2023

New Hanover County, No. 20 CRS 51367

STATE OF NORTH CAROLINA

v.

DARYL SPENCER SCOTT

Appeal by Defendant from a judgment entered 21 September 2021 by Judge William W. Bland in New Hanover County Superior Court. Heard in the Court of Appeals 21 September 2022.

> *Attorney General Joshua H. Stein, by Assistant Attorney General T. Hill Davis, III, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda S. Zimmer, for Defendant.*

WOOD, Judge.

Defendant appeals from a conviction of possessing a firearm as a felon alleging the trial court erred when it denied his motion to suppress evidence of a firearm found during a search he contends was unconstitutional and increased his prior record level at sentencing. We disagree.

## I. Background

Wilmington Police Officer Pagan was surveilling the parking lot of Sam's Minimart in Wilmington on 14 February 2020. The parking lot was located in an

area of the city where drug sales and shootings were not uncommon. He observed Defendant's Honda Accord park on the lot next to a silver sedan whose owner Officer Pagan knew had a history of drug dealing. Defendant and a passenger exited the Honda and approached the silver sedan. Shortly thereafter, Defendant and his passenger returned to the Honda and drove away. Officer Pagan followed them a short distance in his patrol car and noticed the Honda's license plate appeared expired. He then activated the blue lights on his patrol car to conduct a traffic stop of Defendant's vehicle. Defendant promptly pulled over.

Officer Pagan approached Defendant and informed him that he was stopped because of the expired license plate. Defendant did not appear nervous and responded that the registration should not be expired. Upon request, Defendant produced his driver's license but was unable to locate the car's registration. Officer Pagan returned to his patrol vehicle with Defendant's license where he learned from his car's computer system that Defendant was designated as a "validated gang member" and had previously been charged with murder. Relevant to this case, Officer Pagan was aware of a local gang war between two prominent gangs at the time. Officer Pagan retrieved a clip board from his trunk and briefed an arriving officer of the situation before re-approaching Defendant.

Upon returning to Defendant's vehicle, Officer Pagan asked Defendant to step out of the vehicle so that he could perform a weapons frisk. Defendant complied, and Officer Pagan frisked him at the rear of the Honda. Officer Pagan did not find a

weapon on Defendant's person. He then asked the three passengers to exit the vehicle as backup officers arrived. After Officer Pagan performed a non-intrusive pat down of Defendant, Defendant informed him that a pocketknife was present in the front, driver-side door compartment. With this information, Officer Pagan returned to the vehicle to retrieve the pocketknife, and Defendant asked Officer Pagan if he would retrieve Defendant's phone near the center console. Officer Pagan obliged Defendant and found an open beer can in the center console. He then rummaged through the front, driver-side door compartment but did not initially find a pocketknife, so he next peered under the driver's seat where he discovered a pistol.

After securing the pistol, Officer Pagan ordered Defendant and all passengers be detained and placed in handcuffs. A further search of the passenger compartment revealed a scale and bags consistent with heroin paraphernalia. On 24 August 2020, Defendant was indicted for possessing a firearm as a felon in violation of N.C. Gen. Stat. § 14-415.1 (2021) and possessing drug paraphernalia in violation of N.C. Gen. Stat. § 90-113.22(A) (2021).

On 21 September 2021, in a pretrial motion, Defendant moved to suppress evidence of the firearm. Defendant argued that Officer Pagan's frisk of Defendant's vehicle was constitutionally impermissible and therefore produced unlawfully acquired evidence. Defendant did not argue that the traffic stop was impermissibly extended beyond the scope of Officer Pagan's original mission. The trial court denied Defendant's motion.

During his trial, which took place on 23 September 2021, Defendant generally objected to the evidence obtained during the frisk of his vehicle, specifically the firearm. The trial court overruled Defendant's objection. On the same day, the jury found Defendant guilty of possession of a firearm by a felon and not guilty of possession of drug paraphernalia.

During the sentencing hearing, the trial court calculated Defendant's sentence by using a prior record level worksheet for structured sentencing. The worksheet listed a subtotal of nine points from the prior crimes of second-degree murder and three misdemeanor convictions. The court then added one point for committing a crime "while the offender was on probation, parole, or post-release supervision." Thus, Defendant's prior record points totaled ten points, and he was sentenced as a prior record level IV offender. Absent the additional point, Defendant would have been sentenced as a prior record level III offender.

The trial court sentenced Defendant to an active term of a minimum of nineteen and a maximum of thirty-two months imprisonment.

Defendant appeals as of right pursuant to N.C. Gen. Stat. § 15A-1444(a) (2021). He contests the trial court's denial of his motion to suppress evidence and contends he did not receive notice of the additional point for committing a crime while on probation, parole, or post-release supervision and was, therefore, sentenced improperly.

## II.    Standard of Review

- 4 -

We review the denial of a motion to suppress to determine "whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citing *State v. Brooks*, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994)). We review conclusions of law *de novo*. *State v. Johnson*, 225 N.C. App. 440, 443-44 (2013). "Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Reese v. Mecklenburg Cnty.*, 200 N.C. App. 491, 497, 685 S.E.2d 34, 38 (2009) (citations omitted).

We review "[t]he determination of an offender's prior record level [as] a conclusion of law that is subject to *de novo* review on appeal." *State v. Bohler*, 198 N.C. App. 631, 633, 681 S.E.2d 801, 804 (2009) (citing *State v. Fraley*, 182 N.C. App. 683, 691, 643 S.E.2d 39, 44 (2007)).

## III.  Discussion

### A. Evidence Suppression

Defendant first alleges error with the trial court's denial of his motion to suppress evidence of the firearm. Defendant argues that the evidence should have been suppressed because it was obtained in violation of Defendant's right to be free from an unreasonable search and seizure and challenges the trial court's conclusion of law holding otherwise. Specifically, Defendant argues that Officer Pagan improperly frisked Defendant and his vehicle and impermissibly extended the

duration of the traffic stop.  We are not persuaded.

During the motion to suppress, the trial court concluded:

> But up to that point of seeing the firearm under the driver's seat in which the defendant had been driving, the court does not find any constitutional violation of the defendant's rights.  The officer has conducted a legitimate stop and taken appropriate actions for his safety and for the safety of the defendant as well as the passengers in the defendant's vehicle; and therefore the motion to suppress is respectfully denied.

We review this conclusion of law *de novo* to determine if Officer Pagan overstepped his constitutional limits.

The State may not unreasonably seize or search people.  N.C. Const. art. I, § 20; U.S. Const. amend. IV.  If it does, evidence obtained from that illegal conduct must be suppressed at trial.  *State v. Pope*, 333 N.C. 106, 113-14, 423 S.E.2d 740, 744 (1992).  "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *State v. Fizovic*, 240 N.C. App. 448, 452, 770 S.E.2d 717, 720 (2015) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576, 585 (1967)).

Defendant concedes, and we agree, that Officer Pagan's initial traffic stop was proper.  "[A] traffic stop is considered a 'seizure'" for our purposes.  *State v. Otto*, 366 N.C. 134, 136, 726 S.E.2d 824, 827 (2012).  Officer Pagan observed Defendant's vehicle bearing an expired license plate, and we have held that this observation alone

supports a seizure. *State v. Edwards*, 164 N.C. App. 130, 136, 595 S.E.2d 213, 218 (2004). We therefore next evaluate Defendant's claims that the frisk and time extension were unjustified and, therefore, unconstitutional.

### 1. *Weapons Frisk*

If, during a lawful stop, an officer "reasonably believes that the person is armed and dangerous, the officer may frisk the person to discover a weapon or weapons." *State v. Pearson*, 348 N.C. 272, 275, 498 S.E.2d 599, 600 (1998). (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). An officer may also frisk a vehicle to include even the passenger compartment and other such places where a "suspect may gain immediate control of weapons" but "limited to those areas in which a weapon may be placed or hidden." *State v. Johnson*, 378 N.C. 236, 2021-NCSC-85, ¶ 16 (quoting *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 3481, 77 L. Ed. 2d 1201, 1220 (1983)). This is a limited search and may only be justified if "the officer develops a reasonable suspicion that the suspect of the traffic stop is armed and dangerous." *Id.* The "legitimate and weighty interest in officer safety" supports this intrusion. *State v. Johnson*, 246 N.C. App. 677, 692, 783 S.E.2d 753, 764 (2016) (quotation marks omitted) (quoting *Arizona v. Johnson*, 555 U.S. 323, 331, 129 S. Ct. 781, 786, 172 L. Ed. 2d 694, 702 (2009)). The necessary standard of "[r]easonable suspicion demands more than a mere 'hunch' on the part of the officer but requires 'less than probable cause and considerably less than preponderance of the evidence.' " *State v. Johnson*, 378 N.C. 236, 2021-NCSC-85, ¶ 16 (quoting *State v. Williams*, 366

N.C. 110, 117, 726 S.E.2d 161, 167 (2012)).  It "requires only 'some minimal level of objective justification,' and arises from 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the intrusion." *Id.* (first quoting *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008); and then quoting *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880, 20 L. Ed. 2d at 906).  "The crucial inquiry is 'whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' "  *State v. Johnson*, 246 N.C. App. 677, 693, 783 S.E.2d 753, 764-65 (2016) (quoting *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883, 20 L. Ed. 2d at 909).  Officers are therefore "entitled to formulate 'common-sense conclusions' about 'the modes or patterns of operation of certain kinds of lawbreakers.' "  *State v. Butler*, 331 N.C. 227, 234, 415 S.E.2d 719, 723 (1992) (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621, 629 (1981).  "A court ' "must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion" exists.' "  *State v. Otto*, 366 N.C. 134, 138, 726 S.E.2d 824, 828 (2012) (quoting *Styles*, 362 N.C. at 414, 665 S.E.2d at 440).

Here, Officer Pagan observed Defendant visit a parking lot noted for its drug sales and shootings, and while there, Defendant exited his vehicle and briefly approached the vehicle of a known drug dealer.  After Defendant was stopped, Officer Pagan received caution data notifying him Defendant was a validated gang member and had previously been charged with murder.  Officer Pagan was aware that two

local gangs were involved in a gang war, and in his experience, suspects involved with drug and gang activity may be armed and dangerous.

Each of these factors, standing alone, might not be sufficient to justify a weapons frisk. *See State v. Jackson*, 368 N.C. 75, 80, 772 S.E.2d 847, 850 (2015) (stating that defendant's presence in a high-crime area alone is not sufficient), *State v. Johnson*, 378 N.C. 236, 2021-NCSC-85, ¶ 18 n.2 (expressing hesitancy to use a suspect's prior criminal record as a factor except in specific circumstances), *State v. Butler*, 331 N.C. 227, 233, 415 S.E.2d 719, 722 (1992) (stating that officer's experience and defendant's presence around suspected drug dealers are not, on their own, sufficient). However, "[w]e examine the totality of the circumstances surrounding Officer [Pagan]'s interaction with [D]efendant in order to achieve a comprehensive analysis as to whether the officer's conclusion that [D]efendant may have been armed and dangerous was reasonable." *State v. Johnson*, 378 N.C. 236, 2021-NCSC-85, ¶ 18.

For example, our Supreme Court held in *State v. Butler* that the following factors, when taken together, were sufficient to justify a weapons frisk:

> 1) defendant was seen in the midst of a group of people congregated on a corner known as a "drug hole"; 2) [Officer] Hedges had had the corner under daily surveillance for several months; 3) Hedges knew this corner to be a center of drug activity because he had made four to six drug-related arrests there in the past six months; 4) Hedges was aware of other arrests there as well; 5) defendant was a stranger to the officers; 6) upon making eye contact with the uniformed officers, defendant immediately moved

away, behavior that is evidence of flight; and 7) it was Hedges' experience that people involved in drug traffic[king] are often armed.

331 N.C. 227, 233, 415 S.E.2d 719, 722 (1992).

In the present case, similar factors are present: 1) Defendant's presence in a high-crime area; 2) Defendant's interaction with a known drug dealer; 3) caution data revealing Defendant's prior charge of murder and gang involvement; 4) Officer Pagan's awareness of an active gang war; and 5) Officer Pagan's own training and experiences. Though Defendant did not exhibit "evidence of flight" as in *Butler*, we hold that the additional factors of Defendant's status as a validated gang member and Officer Pagan's awareness of an active, local gang war are more than sufficient to cause an officer to reasonably suspect the individual is armed and dangerous. This suspicion permitted Officer Pagan to search both Defendant and his vehicle for weapons before continuing with the purpose of the stop. We, therefore, agree with the trial court's ruling and hold that Officer Pagan did not overstep his constitutional bounds when he frisked Defendant and Defendant's vehicle

### 2. *Extension of Stop*

Defendant next argues that evidence of the firearm should have been suppressed because the stop was unlawfully extended beyond the scope of its purpose. *See Rodriguez v. United States*, 575 U.S. 348, 354, 135 S. Ct. 1609, 1614, 191 L. Ed. 2d 492, 498 (2015). We note, however, that Defendant did not present this argument at the suppression hearing or during trial. Instead, Defendant relied upon the above

weapons frisk theory to support his suppression motion.

"[A] criminal defendant is not entitled to advance a particular theory in the course of challenging the denial of a suppression motion on appeal when the same theory was not advanced in the court below." *State v. Hernandez*, 227 N.C. App. 601, 608, 742 S.E.2d 825, 829 (2013). Such "argument is deemed waived on appeal." *State ex rel Boggs v. Davis*, 207 N.C. App. 359, 363, 700 S.E.2d 85, 88 (2010) (citing *State v. Augustine*, 359 N.C. 709, 721, 616 S.E.2d 515, 525 (2005)).

Because Defendant did not raise this argument in the trial court below, it has been waived.

## B. Sentencing

Defendant next argues that he did not receive proper notice of the State's intent to prove the tenth prior record point and that the trial court did not properly inquire into whether notice was given or otherwise waived. As with the preceding argument, Defendant did not object to this alleged error with the trial court. However, "[i]t is not necessary that an objection be lodged at the sentencing hearing in order for a claim that the record evidence does not support the trial court's determination of a defendant's prior record level to be preserved for appellate review." *State v. Bohler*, 198 N.C. App. 631, 633, 681 S.E.2d 801, 804 (2009) (citing *State v. Morgan*, 164 N.C. App. 298, 304, 595 S.E.2d 804, 809 (2004)). We therefore review this alleged error *de novo*. *Id.*

Under North Carolina's structured sentencing guidelines, a trial court may

assign prior record points to a defendant if the defendant was previously convicted of certain crimes and if the defendant committed the relevant crime while on probation, parole, or post-release supervision. N.C. Gen. Stat. § 15A-1340.14(b) (2021). The sum of these points total the prior record level to be used in calculating the severity of a sentence. § 15A-1340.14(c). Among the list of possible point assignments stands subsection (b)(7):

> If the offense was committed while the offender was on supervised or unsupervised probation, parole, or post-release supervision, or while the offender was serving a sentence of imprisonment, or while the offender was on escape from a correctional institution while serving a sentence of imprisonment, 1 point.

§ 15A-1340.14(b)(7). Subsection (b)(7) is unique in that, unlike with other point assignments, "[t]he State must provide a defendant with written notice of its intent to prove the existence of . . . a prior record level point under . . . (b)(7) at least 30 days before trial." § 15A-1340.16(a6). However, "[a] defendant may waive the right to receive such notice." *Id.* In either case, "[t]he court shall . . . determine whether the State has provided the notice to the defendant . . . or whether the defendant has waived his or her right to such notice." § 15A-1022.1(a). The court is required to follow this and other procedures outlined in Section 15-A1022.1 "unless the context clearly indicates that they are inappropriate." § 15A-1022.1(e).

In the present case, before signing the worksheet, the trial court asked whether the State gave Defendant proper notice of its intent to seek the additional point of

committing a crime while on probation, parole, or post-release supervision.

> [PROSECUTOR]: Your Honor, these convictions began back in 2002 running all the way up to his second-degree murder conviction in 2009 for which he was on parole at the time of this offense, and we have indicated that by adding the proper point in the prior sentencing worksheet.
>
> THE COURT: Had notice been given of that?
>
> [PROSECUTOR]: Yes, sir. We had discussed that.
>
> [DEFENSE COUNSEL]: Yes, Judge.
>
> THE COURT: Okay.

And again, the trial court asked,

> THE COURT: Please. Have you -- you had a chance, [defense counsel], to look at this?
>
> [DEFENSE COUNSEL]: I have, your Honor.
>
> THE COURT: Do you agree that the worksheet is an accurate representation of his prior record?
>
> [DEFENSE COUNSEL]: I do, Judge.

Finally, the Court addressed the point specifically to confirm with both the Defendant and Defendant's counsel as to whether they were informed of the extra point and that it increased the Defendant from 9 to 10 points (resulting in a Level IV rather than Level III).

> THE COURT: I do see this point is the point that takes it from 9 to 10, that this offense was committed while on probation, parole, or post-release supervision. Any—you have anything to say regarding that point?
>
> [DEFENSE COUNSEL]: Not regarding that particular

- 13 -

point, Judge.

After these inquiries, the court found that "the State and the defendant have stipulated in open court to the prior convictions, points, and record level." Both the prosecutor's and defense counsel's signatures appear on the worksheet under the "Stipulation" heading.

### 1. *Notice Requirement*

We first look to whether the State provided Defendant with written notice of its intent to prove the prior record point of committing an offense while "on probation, parole, or post-release supervision" as required by Section 15A-1340.16(a6).[1] We note the presence of a prior record level worksheet in the record that defense counsel might have received as part of discovery, and a review of the transcript during sentencing shows defense counsel was familiar with the worksheet; however, there is no certificate of service within the file to allow us to conclude written notice was given to Defendant. The worksheet lists point assignments for Defendant's prior convictions, an additional point assignment for committing a crime while "on probation, parole, or post-release supervision," and a prior record level IV calculation. Moreover, defense counsel's signature appears alongside the prosecutor's signature under the heading "Stipulation" which states, "The prosecutor and defense counsel .

---

[1] This is a separate inquiry from determining if the State actually *proved* Defendant's prior record level by stipulation or other means. *See* N.C. Gen. Stat. § 15A-1340.14(f) (2021); *State v. Briggs*, 249 N.C. App. 95, 99, 790 S.E.2d 671, 674 (2016).

. . stipulate to the information set out in Sections I [scoring] and V [prior convictions] of this form and agree with the defendant's prior record level . . . ." However, this court has held that merely providing a defendant with a proposed prior record level worksheet during discovery is not sufficient to effectuate the written notice requirement of Section 15A-1340.16(a6). *State v. Crook*, 247 N.C. App. 784, 797, 785 S.E.2d 771, 780 (2016). In the absence of any other writing, then, we must conclude the State failed to deliver proper written notice to Defendant.

Therefore, we next look to whether Defendant waived his right to notice. To determine this, we look at the inquiry and responses made at the sentencing hearing. The circumstances in this case are similar to those in *State v. Wright*, 265 N.C. App. 354, 357-58, 826 S.E.2d 833, 836 (2019). In *Wright*, "the trial court inquired about the notice of the State's intent to prove the aggravating factor, and [defense] counsel responded that he was 'provided the proper notice' and had 'seen the appropriate documents.'" *Wright*, 265 N.C. App. at 360, 826 S.E.2d at 837. The trial court also asked the defendant directly if he wished to "waive the right to have the jury determine the aggravating factor and . . . stipulate to the aggravating factor?" to which the defendant replied, "Yes, sir." *Id.* The defendant's and his counsel's affirmations constituted a sufficient waiver of notice. This Court reasoned that the "defendant's knowing and intelligent waiver of a jury trial on the aggravating factor under the circumstances necessarily included waiver of the thirty day advance notice of the State's intent to use the aggravating factor." *Id.* at 361, 826 S.E.2d at 838.

"Even though the State had not technically given 'proper notice' because the additional file numbers were added to the notice only twenty days before trial instead of thirty days, defendant and his counsel had sufficient information to give an 'intentional relinquishment of a known right.' " *Id.* (quoting *Ussery v. Branch Banking & Tr. Co.*, 368 N.C. 325, 336, 777 S.E.2d 272, 279 (2015)).

In the present case, Defendant's counsel stated affirmatively that he had received notice of the State's intent to assess the sentencing point, which was confirmed by the attorney for the State. When asked by the trial court if the State provided notice of its intent to prove Defendant was on parole at the time of the offense, the prosecutor stated, "Yes, sir. We had discussed that," and defense counsel responded, "Yes, Judge." Though the trial court did not question Defendant directly about his intent to waive notice, as in *Wright*, we hold that defense counsel's stipulation and affirmation on behalf of his client was sufficient to constitute waiver of the notice requirement.

Moreover, Defendant's counsel affirmed that Defendant was on parole at the time of the commission of the present crime and signed the sentencing worksheet which indicated that the Defendant was on parole. Furthermore, the second-degree murder conviction that was the basis for Defendant's conviction for a felon in possession of a firearm was the basis of this sentencing point. This conviction was stipulated to by Defendant at trial, and the judgment in that case was introduced as State's Exhibit 7 at trial. This conviction was also referenced in Defendant's

indictment in this case.

## 2. *Court Inquiry*

Finally, we consider whether the trial court performed its procedural duties under Section 15A-1022.1, the Blakley Act. This statute requires the court to "determine whether the State . . . provided the notice to the defendant required by G.S. 15A-1340.16(a6) or whether the defendant . . . waived his or her right to such notice." § 15A-1022.1(a). When a defendant admits to a prior record finding for the offense of committing a crime while on probation, parole, or post-release supervision, the trial court must also perform a mandatory colloquy with

> the defendant personally and advise the defendant that:
>
> (1) He or she is entitled to have a jury determine the existence of any aggravating factors or points under G.S. 15A-1340.14(b)(7); and
>
> (2) He or she has the right to prove the existence of any mitigating factors at a sentencing hearing before the sentencing judge.

§ 15A-1022.1(b). Further, it must "determine that there is a factual basis for the admission, and that the admission is the result of an informed choice by the defendant." § 15A-1022.1(c). These procedures may be ignored, however, if "the context clearly indicates that they are inappropriate." § 15A-1022.1(e).

Exploring the context necessary to cast aside the requirements of Section 15A-1022.1, this Court held in *State v. Marlow* that certain "circumstances under which defendant's prior record was stipulated" were sufficient to fall within this exception.

- 17 -

229 N.C. App. 593, 602, 747 S.E.2d 741, 748, (2013).

> After asking defense counsel if they had a chance to review the prior record level and have a discussion with defendant, defense counsel responded "[h]e did [stipulate], yes, sir." Defense counsel had the opportunity to inform defendant of the repercussions of conceding certain prior offenses and defendant had the opportunity to interject had he not known such repercussions. Yet, even after being informed, defendant neither objected to nor hesitated when asked about such convictions. With such a routine determination as to whether defendant was convicted of possession of drug paraphernalia while on probation for another offense, we see no reason to have engaged in an extensive colloquy with defendant.

*Id.*

Here, we likewise hold that the court's interaction with defense counsel amounted to the same "routine determination." Defense counsel affirmed he had seen the prior record level worksheet and that it was "an accurate representation of his prior record." Defendant, through his counsel, stipulated to the addition of the prior record point as evidenced by defense counsel's signature. As in *Marlow*, defense counsel "had the opportunity to inform defendant of the repercussions of conceding certain prior offenses and defendant had the opportunity to interject had he not known such repercussions" and did not object to the point at sentencing. *Id.* Therefore, the trial court was not required to follow the precise procedures prescribed in N.C. Gen. Stat. § 15A-1022.1 (2021), as defendant acknowledged his status and violation by arrest in open court.

## IV. Conclusion

Evidence of the firearm was properly obtained such that the trial court did not err by denying Defendant's motion to suppress. Though the State did not provide written notice of its intent to prove a unique prior record point, Defendant waived such notice, and the trial court was not required to perform a colloquy under the Blakely Act. N.C. Gen. Stat. § 15A-1022.1 (2021). We find no error in the jury's verdict or the judgment entered by the trial court.

NO ERROR.

Judges TYSON and CARPENTER concur.