STATE OF NORTH CAROLINA
v.
JAMES HOWARD SINK, JR.
No. COA07-1407
Court of Appeals of North Carolina
Filed July 1, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Barry H. Bloch, for the State.
Walter C. Holton, Jr. for defendant-appellant.
WYNN, Judge.
In an appeal from a jury instruction, the appealing party must demonstrate not only that error occurred in the jury instruction, but that the error was likely, in light of the entire charge, to mislead the jury.[1] Here, Defendant James Sink Jr. argues that the trial court erred by instructing the jury on a theory of aiding and abetting and on the friend exception to the mere presence rule. Because the jury instructions were unlikely to mislead the jury in light of the entire jury charge, we find no error.
On 13 August 2005, Maynard Peters and Chris Bradley were racing cars in a stadium stock division race at Bowman Gray Stadium. Mr. Peters owned the car he was driving and Defendant owned the car driven by Chris Bradley. During the race, Mr. Peters's car collided with the car driven by Chris Bradley, causing damages to both vehicles. Mr. Peters testified that as the cars were lining up for the race to restart, Defendant ran on to the track, jumped into the right side of his vehicle, and told Mr. Peters that "he was going to [f-] me up."
After Mr. Peters's race ended, he drove to his pits and saw his daughter arguing with Gary Beals. Although the police broke up the argument, Mr. Peters testified that Mr. Beals later hit him "upside the head" and told him "you [f-d] up." Mr. Peters then went back to the stands to watch the rest of the races with his family.
When all the races had ended and Mr. Peters was preparing to leave, one of the officials told him that a track steward, Mark Wall, wanted to see him at the field house. Mr. Peters asked Kevin Albrecht to accompany him to the field house. When the pair arrived at the field house and were standing on the porch, Mr. Peters testified that he was hit in the back of the head by a person that he did not see. He then stumbled forward and as he turned around, Defendant "hit me in the face seven or eight times before I hit the ground. I fell, hit the ground, and he got on top of me and hit me several more times . . . then I passed out[.]" Mr. Peters testified that the next thing he knew, he was on all fours with blood everywhere, including in his eyes, when he saw Robert Bradley, Chris Bradley's twin brother, coming towards him. Mr. Peters stated that Robert Bradley "kicked me in the forehead like kicking a field goal," and that he then lost consciousness and does not remember anything until he went home from the hospital. As a result of the attack, Mr. Peters suffered fifteen fractures of his facial bones, including a broken nose, required three surgical procedures, and has since suffered from problems with his facial nerves and panic attacks.
Mr. Albrecht testified that on 13 August 2005, he was working as a crew member for his friend, Mr. Peters, and accompanied him to the field house. Mr. Albrecht testified that the following occurred upon their arrival at the field house:
And we was starting to talk to [Mr. Wall], and then Chris Bradley come off from the side, struck [Mr. Peters], and that's when I jumped on Chris and we fell off that little ledge there. And we was in the grass for a little bit, somebody grabbed me around the neck and struck me upside the face. And when . . . I finally got . . . up [Mr. Peters] was over in the right or to my right in the corner just slouched over.
Mr. Albrecht testified that while struggling with Chris Bradley, he was struck on the side of the face and put in a headlock by a person he did not see. Mr. Albrecht testified that he did not see Defendant strike Mr. Peters and did not see anyone other than Chris Bradley strike Mr. Peters because he and Chris Bradley were fighting on the ground. Mr. Albrecht suffered a headache, swollen eye, and a bruised cheek.
Additional witnesses were presented by the State and by Defendant. However, the witnesses gave conflicting testimony of the fight, as some testified that they saw Defendant hit Mr.Peters, while others stated that they had not seen Defendant hit Mr. Peters. Additionally, two witnesses testified that they saw Defendant hit Mr. Albrecht, while other witnesses testified that they saw Defendant trying to break up the fight between Chris Bradley and Mr. Albrecht.
On 23 January 2006, Defendant was indicted for assault inflicting serious bodily injury on Mr. Peters, assault inflicting serious injury on Mr. Peters, assault inflicting serious injury on Mr. Albrecht, and two counts of habitual misdemeanor assault. On Defendant's motion, the trial court dismissed the two counts of habitual misdemeanor assault and the charge of assault inflicting serious injury on Mr. Peters. At trial, the jury returned guilty verdicts on the charges of assault inflicting serious injury on Mr. Peters and simple assault on Mr. Albrecht. The trial court sentenced Defendant to 75 days confinement, suspended for 36 months, on the condition that he serve 18 days in the custody of the Forsyth County Sheriff and pay $20,630.79 in restitution, and 45 days confinement, suspended for 36 months, to run at the end of the expiration of the confinement for his other sentence.
On appeal, Defendant argues that the trial court erred by: (I) instructing the jury on a theory of aiding and abetting and on the friend exception to the mere presence rule and (II) denying his motion to dismiss the assault charges.

I.
Defendant first argues that the trial court erred by instructing the jury on a theory of aiding and abetting and on the friend exception to the mere presence rule for the assault on Mr. Peters. We disagree.
In an appeal from a jury instruction,
this Court considers a jury charge contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.
Bass v. Johnson, 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002) (internal citations and quotations omitted).
It is well established that
[a] person is not guilty of a crime merely because he is present at the scene even though he may silently approve of the crime or secretly intend to assist in its commission; to be guilty he must aid or actively encourage the person committing the crime or in some way communicate to this person his intention to assist in its commission.
State v. Goode, 350 N.C. 247, 260, 512 S.E.2d 414, 422 (1999) (citation omitted). However, our courts have recognized an exception to the mere presence rule and held that "[w]hen the bystander is a friend of the perpetrator and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as an encouragement." Id. (citations omitted).
Here, the evidence presented at trial demonstrates that Defendant employed the Bradley brothers and owned the race car driven by Chris Bradley which collided with Mr. Peters's car. As the Bradleys' employer and the owner of the damaged car, a reasonable juror could find that Defendant knew that his presence at the field house during the fight would be regarded by the Bradleys as encouragement and protection.
Additionally, Mr. Peters testified that after the accident between Mr. Peters and Chris Bradley, Defendant ran out onto the track, "jumped in the side of my car and said he was going to [f-] me up." This evidence reasonably supports a finding of Defendant's intent to aid the Bradleys and provides a motive for Defendant to assault Mr. Peters: he was upset because of the damage to his car and the loss of the race. Finally, the State also presented evidence of prior disputes between Defendant and Mr. Peters and of a long-standing unfriendly rivalry between the two men. Thus, in considering evidence of the relationship between Defendant and the Bradleys, Defendant's motive, and the rivalry between Defendant and Mr. Peters, we cannot conclude that the trial court erred by instructing the jury on a theory of aiding and abetting and on the friend exception to the mere presence rule. Accordingly, we reject this assignment of error.

II.
Defendant next argues that the trial court erred by denying his motion to dismiss the charge of simple assault regarding Mr. Albrecht and the charge of assault inflicting serious injury regarding Mr. Peters. In reviewing a motion to dismiss in a criminal action, "the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455, cert. denied, 531 U.S. 890, 148 L. Ed. 2d 150 (2000).
Defendant argues that the evidence was insufficient to establish that his actions caused "serious injury" to Mr. Peters because it was not clear which injuries were caused by Defendant and which were caused by Robert Bradley. Our Supreme Court has stated:
Whether a serious injury has been inflicted depends upon the facts of each case and is generally for the jury to decide under appropriate instructions. A jury may consider such pertinent factors as hospitalization, pain, loss of blood, and time lost at work in determining whether an injury is serious.
State v. Hedgepeth, 330 N.C. 38, 53, 409 S.E.2d 309, 318 (1991) (citations omitted), cert. denied, 529 U.S. 1006, 146 L. Ed. 2d 223 (2000).
Here, although Defendant was not the only person to assault Mr. Peters, Mr. Peters's testimony provided sufficient evidence that Defendant inflicted serious injury on him. Mr. Peters testified that Defendant hit him in the face seven or eight times, and several more times once he fell to the ground. Mr. Peters stated that he then passed out. Mr. Peters also testified that after being hit by Defendant, but before being kicked by Robert Bradley, "I was on all fours, my hands and knees, trying to get up off the ground. There was blood everywhere. And I couldn't really see . . . because there was so much blood in my eyes[.]" Mr. Peters's testimony that Defendant hit him in the face multiple times causing blood loss provided substantial evidence that Defendant inflicted serious injury on Mr. Peters. Accordingly, we reject this assignment of error.
Defendant also argues that the evidence was insufficient to establish that he was the perpetrator of the assault against Mr. Albrecht.
Although Mr. Albrecht testified that he did not see who grabbed him around the neck and struck him in the face while he was wresting around with Chris Bradley, witness testimony provided sufficient evidence of Defendant being the perpetrator of the assault. Numerous witnesses testified at trial that they saw Defendant trying to separate Mr. Albrecht from Chris Bradley. Additionally, Randy Boone testified that he saw Defendant "hit [Mr. Albrecht] two times and it was over with" and Gary Beals testified that he saw Defendant separate Mr. Albrecht and Chris Bradley and Defendant "popped" Mr. Albrecht. We find that the witness testimony provided substantial evidence of Defendant being the perpetrator of the simple assault against Mr. Albrecht. Accordingly, we reject this assignment of error.
No error.
Judges CALABRIA and GEER concur.
Report per Rule 30(e).
NOTES
[1] Bass v. Johnson, 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002) (citation omitted).