IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-353

No. COA20-581

Filed 20 July 2021

Richmond County, No. 19 CRS 001157

STATE OF NORTH CAROLINA,

v.

CHRISTOPHER HUCKABEE, Defendant.

Appeal by Defendant from judgment entered 4 December 2019 by Judge Stephan R. Futrell in Richmond County Superior Court. Heard in the Court of Appeals 27 April 2021.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Ann K. Cosper, for the State.*
>
> *Daniel J. Dolan for Defendant-Appellant.*

GRIFFIN, Judge.

Defendant Christopher Huckabee appeals from a judgment entered upon his convictions for assault with a deadly weapon inflicting serious injury and attaining the status of a habitual felon. Defendant argues that the trial court erred by (1) denying Defendant's motion to dismiss the charges; (2) failing to dismiss the indictment due to a fatal variance between the indictment and the evidence presented at trial; (3) failing to instruct the jury on the lesser included offense of assault with a

deadly weapon; and (4) entering a civil judgment ordering Defendant to pay attorney's fees without providing Defendant notice and an opportunity to be heard. Upon review, we hold that the trial court's failure to instruct the jury on the lesser included offense of assault with a deadly weapon constitutes reversible error. We therefore vacate the judgment entered upon Defendant's convictions and remand for a new trial. We also vacate the civil judgment as to attorney's fees.

## I. Factual and Procedural Background

¶ 2 The present case centers around a jailhouse fight that occurred between several inmates at the Richmond County Jail.

¶ 3 During the early morning hours on 14 April 2019, Officer Gregory Riggins was working an overnight shift at the Richmond County Jail. After hearing some noise emanating from the "C Block" of the jail, Officer Riggins walked over to the C Block and heard inmate Matthew Winfield yelling, "Let me out the cell." When Officer Riggins asked Mr. Winfield what was wrong, Mr. Winfield responded that another inmate had "thr[own] pee on him."

¶ 4 Officer Riggins then released Mr. Winfield from his cell and into the "day area" of the C Block just outside the cell. At the time, three other inmates were present in the day area of the C Block. After Mr. Winfield was released from his cell, one of the inmates in the day area "took a broom and started hitting on [Mr.] Winfield." Shortly thereafter, Officer Jonathan Nails responded to the scene to assist Officer Riggins.

Officer Nails testified that he witnessed three inmates, including Defendant, "punching and stomping Mr. Winfield" and that "[Defendant] had the broom in his hand and struck Mr. Winfield." After the altercation ended, officers observed that Mr. Winfield had a bleeding nose, bruised face, and "red marks and welts" on the forehead and back.

¶ 5        Mr. Winfield was later transported to Richmond Memorial Hospital where he was evaluated by emergency physician Dr. Jonathan Brower. At trial, Dr. Brower confirmed that Mr. Winfield had "multiple fractures to the nasal area" and one fracture "underneath the eye." When asked to describe the typical level of pain caused by such fractures, Dr. Brower testified that "[i]t tends to be uncomfortable for a few days" but that "it's not quite the same as like a broken arm, because you're generally not moving that part of your body as much." Mr. Winfield was discharged from the hospital approximately one hour and thirty minutes after admission. When asked why Mr. Winfield was not kept in the hospital for a longer period, Dr. Brower testified, "We typically don't need to keep anybody longer for these types of injuries."

¶ 6        A Richmond County grand jury returned true bills of indictment charging Defendant with assault with a deadly weapon inflicting serious injury and attaining the status of a habitual felon. During the jury charge conference, the trial court agreed to instruct the jury on two lesser included offenses of assault with a deadly weapon inflicting serious injury: (1) simple assault and (2) assault inflicting serious

injury. The trial court declined to instruct the jury on the lesser included offense of assault with a deadly weapon, despite Defendant's requests that the instruction be included.

¶ 7        On 4 December 2019, a jury found Defendant guilty of assault with a deadly weapon inflicting serious injury. Defendant then pled guilty to attaining the status of a habitual felon. Defendant provided oral notice of appeal in open court.

## II. Analysis

¶ 8        Defendant argues that the trial court erred by (1) denying Defendant's motion to dismiss the charges; (2) failing to dismiss the indictment due to a fatal variance between the indictment and the evidence presented at trial; (3) failing to instruct the jury on the lesser included offense of assault with a deadly weapon; and (4) entering a civil judgment ordering Defendant to pay attorney's fees without providing Defendant notice and an opportunity to be heard. We agree that the trial court erred by failing to instruct the jury on the lesser included offense. For this reason, we vacate the trial court's judgment entered upon his criminal convictions, vacate the civil judgment as to attorney's fees, and need not consider the merits of his other arguments.

¶ 9        Defendant argues that he "must receive a new trial because the trial court failed to instruct the jury on the lesser included offense of assault with a deadly

weapon despite the fact that there was evidence that the injury was not serious and counsel for [Defendant] requested the instruction[.]"

¶ 10 "In North Carolina, a trial judge must submit lesser included offenses as possible verdicts, even in the absence of a request by the defendant, where sufficient evidence of the lesser offense is presented at trial." *State v. Lowe*, 150 N.C. App. 682, 686, 564 S.E.2d 313, 316 (2002) (citation omitted). "A trial court must give instructions on all lesser-included offenses that are supported by the evidence, even in the absence of a special request for such an instruction; and the failure to so instruct constitutes reversible error that cannot be cured by a verdict finding the defendant guilty of the greater offense." *State v. Lawrence*, 352 N.C. 1, 19, 530 S.E.2d 807, 819 (2000) (citations omitted). "The sole factor determining the judge's obligation to give such an instruction is the presence, or absence, of any evidence in the record which might convince a rational trier of fact to convict the defendant of a less grievous offense." *State v. Wright*, 304 N.C. 349, 351, 283 S.E.2d 502, 503 (1981) (citations omitted).

¶ 11 "A trial court's decision not to give a requested lesser-included offense instruction is reviewed *de novo* on appeal." *State v. Matsoake*, 243 N.C. App. 651, 657, 777 S.E.2d 810, 814 (2015) (citation omitted). "When determining whether there is sufficient evidence for submission of a lesser included offense to the jury, we view the evidence in the light most favorable to the defendant." *State v. Ryder*, 196 N.C.

App. 56, 64, 674 S.E.2d 805, 811 (2009) (citing *State v. Barlowe*, 337 N.C. 371, 378, 446 S.E.2d 352, 357 (1994)).

¶ 12        Unlike assault with a deadly weapon inflicting serious injury, "the lesser included offense of assault with a deadly weapon . . . does not require that the victim suffer serious injury." *State v. McCoy*, 174 N.C. App. 105, 113, 620 S.E.2d 863, 870 (2005). Accordingly, if a rational juror could conclude from the evidence presented at trial that Mr. Winfield did not suffer serious injury, then the trial court erred by failing to instruct the jury on the lesser included offense of assault with a deadly weapon, and Defendant is entitled to a new trial. *Id.* at 113-14, 620 S.E.2d at 870.

¶ 13        "[W]hether a serious injury has been inflicted depends upon the facts of each case and is generally for the jury to decide under appropriate instructions." *Id.* at 113, 620 S.E.2d at 870 (alteration in original) (quoting *State v. Hedgepeth*, 330 N.C. 38, 53, 409 S.E.2d 309, 318 (1991)). "Pertinent factors for jury consideration include hospitalization, pain, blood loss, and time lost at work." *Id.* at 113-114, 620 S.E.2d at 870 (citation omitted).

¶ 14        For example, in *McCoy*, "[t]he State's evidence tended to show that . . . [the] defendant had severely beaten [the victim] and restrained her against her will over the course of . . . [a] month and [a] half." *Id.* at 108, 620 S.E.2d at 867. The victim reported that "the defendant beat her in the face[] and twisted her arm until it fractured." *Id.* The State's evidence "tended to show that . . . [the] defendant used

his hands to twist [the victim's] arm until it broke." *Id.* at 113, 620 S.E.2d at 869. Notwithstanding the extent of the victim's injuries, this Court held that "the jury could rationally have found [the] defendant guilty of assault with a deadly weapon" and that the trial "court erred by not instructing on that offense." *Id.* at 114, 620 S.E.2d at 870.

¶ 15     In another case, *State v. Owens*, 65 N.C. App. 107, 308 S.E.2d 494 (1983), the victim was shot by the defendant in the right arm and received medical treatment at a hospital. *Id.* at 109, 111, 308 S.E.2d at 496-98. The defendant argued on appeal "that the trial judge should have submitted a jury instruction on misdemeanor assault with a deadly weapon[.]" *Id.* at 110, 308 S.E.2d at 497. This Court agreed and held that "reasonable minds could differ" as to whether the victim's injuries were serious, reasoning that the victim was only "treated at a hospital for about three hours." *Id.* at 111, 308 S.E.2d at 498; *see also State v. Bagley*, 183 N.C. App. 514, 527, 644 S.E.2d 615, 623-24 (2007) (holding that "reasonable minds could differ as to whether [the victim's] injury was serious" where the victim sustained "a gunshot wound to the leg" for which the victim was hospitalized and released "after about two hours").

¶ 16     Viewed in the light most favorable to Defendant, we conclude that a rational juror could have found that no serious injury occurred. Mr. Winfield's injuries included a bleeding nose, bruised face, and "red marks and welts" on the forehead

and back.  Mr. Winfield also sustained "multiple fractures to the nasal area" and one fracture "underneath the eye."  However, this Court held in *McCoy* that reasonable minds could disagree as to whether the victim's broken arm constituted a serious injury.  *McCoy*, 174 N.C. App at 113-14, 620 S.E.2d at 870.  Moreover, Dr. Brower testified at trial that the typical level of pain caused by facial fractures is "not quite the same as like a broken arm, because you're generally not moving that part of your body as much."

¶ 17        Mr. Winfield was treated and discharged from the hospital approximately one hour and thirty minutes after admission.  In *Owens* and *Bagley*, both victims were similarly treated and discharged in under three hours.  *Owens*, 65 N.C. App. at 111, 308 S.E.2d at 498; *Bagley*, 183 N.C. App. at 527, 644 S.E.2d at 623-24.  When asked why Mr. Winfield was not kept in the hospital for a longer period, Dr. Brower testified, "We typically don't need to keep anybody longer for these types of injuries."

¶ 18        During the charge conference after the presentation of evidence concluded, the trial court agreed to instruct the jury on the lesser included offense of simple assault, stating "I think I'll put [the instruction] in.  I think there is some evidence based on the questions you had of the doctor—that these [injuries] are not that serious."  This statement and the jury instruction on the charge of simple assault indicate the trial court must have concluded that a rational juror could have found that Mr. Winfield's injuries were not serious.  The trial court thus erred by failing to instruct the jury on

the lesser included offense of assault with a deadly weapon. Defendant is entitled to a new trial.

¶ 19 Defendant also argues that the trial court erred by entering a civil judgment ordering Defendant to pay attorney's fees without providing Defendant notice and an opportunity to be heard. Because we vacate the judgment entered upon Defendant's convictions and remand for a new trial, Defendant is not required to pay attorney's fees associated with the vacated convictions. *See* N.C. Gen. Stat. § 7A-455(c) (2019) ("No order for partial payment under subsection (a) . . . and no judgment under subsection (b) . . . shall be entered unless the indigent person is convicted."); *State v. Rogers*, 161 N.C. App. 345, 346, 587 S.E.2d 906, 907 (2003) ("[T]he universal practice of the general courts of justice is to not reduce to judgment the money value of legal services provided an indigent person convicted at trial when an appeal is taken that results in a reversal of the conviction."). We therefore vacate the trial court's civil judgment as to attorney's fees.

## III. Conclusion

¶ 20 For the reasons stated herein, we vacate the trial court's judgment entered upon Defendant's criminal convictions and remand for a new trial. We vacate the civil judgment as to attorney's fees.

NEW TRIAL; VACATE ATTORNEY'S FEES.

Judges INMAN and GORE concur.